JOHN S. HOBBS & another vs. COLUMBIA FALLS BRICK
COMPANY.

Suffolk.   January 25, 1892. — September 7, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Insolvency — Abandonment of Contract.*

After a contract for the delivery of brick by A. to B. was entered into, B. made an assignment for creditors and gave notice thereof to A. B. soon after compounded with his creditors by composition proceedings under the insolvent act. No reference to the contract was contained in the schedule of assets filed by B. in the insolvency court, or in the statement of assets made by B. at a meeting of his creditors. The contract was executory, and B. knew that the brick were to be made at A.'s place in Maine. B. gave no notice to A. until more than four months after notice of his assignment that he should claim performance, and did not then offer to secure A. under the contract. A. had sold the brick a few weeks before. *Held*, in an action by B. against A. for breach of the contract, that it would have been competent for the jury to find that B. had abandoned the contract, and that A. had assented to and acted upon such abandonment.

CONTRACT. The writ was dated October 16, 1890. The declaration alleged that on December 3, 1889, the plaintiffs entered into a written contract with the defendant, whereby the plaintiffs agreed to purchase and the defendant to sell a certain quantity of brick at a certain price, to be delivered on or before June 15, 1890; that the plaintiffs had been always ready to discharge their part of the contract, but the defendant had refused to perform its part thereof. The answer was a general denial, with allegations of fraud.

At the trial in the Superior Court, before *Barker*, J., the following facts were agreed: that the plaintiffs made an assignment for their creditors at common law on January 8, 1890, and immediately notified the defendant thereof; that the property was held by the assignees pending the insolvency proceedings hereinafter described, and was reconveyed to the plaintiffs on or before April 17, 1890; that on February 4, 1890, the plaintiffs filed a voluntary petition in insolvency in the Court of Insolvency for the county of Middlesex, and on the following day filed in that court a schedule of assets required by law, wherein no mention was made of any interest in the above contract; that

on March 13, 1890, a composition on the part of the insolvents was duly confirmed by said court, and in the following May the plaintiffs sent and the defendant received a letter in which the plaintiffs declared themselves ready to perform their part of the contract, and called on the defendant to perform its part thereof.

The defendant called one Thompson, its treasurer, who testified that in January, 1890, after the witness had been notified of the assignment, he attended a meeting of the creditors at which one Norcross, one of the plaintiffs, read a statement of the assets, which made no mention of any interest in the contract; that at some time previous to April 23, 1890, the witness learned, through his counsel, that the schedule of assets filed by the plaintiffs in their insolvency case made no mention of any interest under the contract; that about the last of January, or early in February, 1890, the witness met one Parry, who was an extensive manufacturer and dealer in brick, and one of the assignees under the assignment for the benefit of creditors, and asked him if, as assignee, he should claim the contract; that Parry said he would talk with his attorney about it; that Parry seemed indifferent about it, and did not leave an impression with the witness that he would claim the contract; that subsequently the witness met Parry, and asked him again if he was going to claim the contract, and he, Parry, answered about the same as before; that the witness, did not have any interview with any of the plaintiffs between January 8 and April 23, 1890, in regard to delivering brick under the contract; that some time in April he agreed to sell to others the brick which were to have been delivered to the plaintiffs; that the brick were not in existence when the contract declared on was made, but were to be manufactured at the defendant's works in Columbia Falls, in the State of Maine; and that no one on behalf of the plaintiffs or their assignees ever paid or offered to pay or to secure to the defendant any money for carrying out the contract.

The defendant called one King, its president, who testified that both Glidden and Parry knew that the brick would have to be manufactured; that he had told them so, and that he had no conversation with any of the plaintiffs between January 8 and April 23, 1890.

The testimony of Thompson and King was not controverted by the plaintiffs, but it appeared that the defendant did not ask for any money or security for the performance of the contract after the failure, from either the plaintiffs or their assignees.

The judge ruled that the evidence contained in the agreed facts, and in the testimony of Thompson and King, constituted no defence, and the jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*F. T. Benner*, for the defendant.

*S. L. Whipple*, for the plaintiffs.

MORTON, J.  We think that, upon the facts which were agreed, and upon those which appeared in evidence from the testimony of its president and treasurer, the defendant was entitled to go to the jury on the question whether there had been an abandonment of the contract by the plaintiffs and their assignees, which was assented to by the defendant.  The court ruled generally, upon the evidence thus disclosed, that it would not constitute a defence.  If, therefore, the defendant can avail of it in any aspect as a defence, it is entitled to a new trial.

As the case was left, it appeared that after the contract was entered into the plaintiffs became insolvent, and made a voluntary assignment for the benefit of their creditors, of which they gave notice to the defendant.  They afterwards took the benefit of the insolvent act, and compounded with their creditors by composition proceedings.  No reference to the contract was contained in the schedule of assets which they filed in the insolvency court, and there was no allusion to it in the statement of their assets which was made by them at a meeting of their creditors. The contract was an executory one, and the plaintiffs knew that the brick were to be made at the defendant's place in Maine. They gave no notice directly or indirectly to the defendant till May 12, more than four months after the notice of their assignment, that they should claim performance, and did not till then offer to pay or secure the defendant under the contract.  The defendant sold the brick some time in April.  We think it would have been competent for the jury to find, under these circumstances, that the plaintiffs had abandoned the contract, and that the defendant had assented to and acted upon such abandonment. The jury properly could have regarded the giving of the notice

of the assignment as equivalent to the plaintiffs saying that they could not go on with the contract, especially when taken in connection with all the other circumstances. *Morgan* v. *Bain*, L. R. 10 C. P. 15. *In re Phœnix Bessemer Steel Co.* 1 Ch. D. 108. *Ex parte Stapleton*, 10 Ch. D. 586. *Ex parte Chalmers*, L. R. 8 Ch. 289.

While the fact that the plaintiffs became insolvent after entering into the contract would not of itself have terminated the contract, it was competent for the jury to find that the notice which they gave to the defendant of the assignment and their subsequent conduct justified the defendant in the assumption that they had abandoned the contract. The conduct of the assignees, assuming that the contract passed to them, does not put the matter in any better shape for the plaintiffs. It was their duty within a reasonable time after the assignment to elect whether to proceed or not with the contract, and to notify the defendant accordingly. *Ex parte Chalmers*, L. R. 8 Ch. 289. *Ex parte Stapleton*, 10 Ch. D. 586. They did not do this. On the contrary, when the defendant's treasurer inquired whether they were going to claim the contract, the reply which he got left on his mind the impression that they were not. They did nothing to indicate that they were going to claim it, and did not offer to pay or in any way secure the defendant for the performance of the contract. They continued to hold the property assigned to them till April 17, without taking any action in reference to the contract, when they reconveyed it to the plaintiffs, who could derive no higher right from the assignees than they themselves possessed.

Inasmuch as there must be a new trial, and the case may then go off on the ground which we have indicated above, or the facts relating to it may not then be as now stated, we have not considered the effect of the testimony offered by the defendant tending to show that the plaintiffs were hopelessly insolvent at the time when they made the contract, and knew themselves to be so, and concealed the fact from the defendant, who was thereby induced to enter into the contract.

*Exceptions sustained.*