FRANCIS J. NEVINS *vs.* FRANCES E. WARD & another.

Middlesex.    April 2, 1946. — July 1, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Contract,* Building contract, Performance and breach, Implied, Modification. *Equity Pleading and Practice,* Counterclaim, Decree.

After a building contractor had failed substantially to pay for his labor and materials as required by his contract with the owner, a statement by him to the owner in effect that he would not go on and complete the building unless the owner should make him certain advances for labor in excess of those required by the contract justified the owner's ordering him to quit the job and hiring another builder to complete it.

A builder who failed to complete the construction of a house which he had contracted to construct was not entitled to recover against the owner on quantum meruit where the aggregate amount of the cost of completing the construction and of the sums already paid him by the owner under the contract was at least as much as the contract price.

A building contractor was not entitled to recover against the owner separately for "extras" where the course of dealing of the parties showed that the agreements giving rise to the "extras" were treated by the parties as modifications of the original building contract and not as collateral agreements, and that the claims for the "extras" had become merged in the original contract.

A final decree dismissing a bill in equity to enforce claims of a building contractor against a landowner should have included a dismissal of a counterclaim by the defendant against the plaintiff for breach of the building contract where it appeared that on facts found the defendant was not entitled to recover on the counterclaim.

BILL IN EQUITY, filed in the Superior Court on September 18, 1940.

Following confirmation of a master's report, a final decree dismissing the bill was entered by order of *Dillon,* J. The plaintiff appealed.

*M. T. Hall,* for the plaintiff.

*F. R. Walsh,* for the defendant.

QUA, J. This suit in equity is in substance the equivalent of an action at law arising out of a written contract, dated April 26, 1940, whereby the plaintiff agreed to build a house in Quincy for the defendant Ward, hereinafter called the defendant, at a price (as modified by subsequent agreement eliminating some of the work) of $11,525. The several claims of the plaintiff against the defendant are the equivalent of counts in an action at law (1) for alleged breach of the contract by the defendant, (2) upon quantum meruit for extras, and (3) upon quantum meruit for work, labor and materials, including not only all that was done and supplied under the contract but the extras as well. Any contention that the proceeding should have been at law instead of in equity has been waived by the defendant. *Parkway, Inc.* v. *United States Fire Ins. Co.* 314 Mass. 647, 651. The facts have been found by a master. His report has been confirmed by interlocutory decree from which no appeal has been taken.

The plaintiff began work on April 29 and continued until September 11, when he received a notice from the defendant's attorney asserting that the plaintiff had violated the contract and ordering him to quit the job. A crucial question in the case is whether this action of the defendant in notifying the plaintiff to stop work was a breach of the contract by the defendant, as the plaintiff contends, or a refusal to go on with it which was justified by the previous conduct of the plaintiff, as the defendant contends.

The facts upon which this issue must be decided are these: The contract provided for "Progress Payments" of eighty-five per cent of the value, based on contract prices, of labor and material incorporated in the work up to the first and fifteenth of each month, and further provided that prior to the second and to subsequent payments the plain-

tiff should submit evidence satisfactory to the architect and owner that payrolls, material bills, and other indebtedness connected with the work performed under the preceding payment had been paid. In general, "Progress Payments" were made twice a month, but the plaintiff did not pay all payrolls, material bills, and indebtedness connected with the work performed under preceding payments. The defendant waived this requirement as payments came due until about September 1, but not "in respect of subsequent progress payments." By the time the payment became due for work done up to September 1 the accumulation of unpaid charges amounted to a substantial sum. On August 23, the defendant was summoned as trustee in the amount of $2,000 in an action against the plaintiff by one Spencer for a sum due on other work. The defendant and her attorney began an investigation of the indebtedness of the plaintiff, who then owed in fact over $1,500 with respect to the defendant's job. The defendant's attorney charged the plaintiff with owing from $1,100 to $1,300 in unpaid bills on the job. The plaintiff at first denied this and then admitted that he did owe $1,100. The attorney asked what the plaintiff was going to do about it. The plaintiff said he did not know what he could do. At a later interview the plaintiff asked about further payments. He sent the defendant a bill for $300 for "labor." The defendant's attorney told the plaintiff that until he "complied with the contract" he would get no further payments. On September 9 there was a long interview between the plaintiff and the defendant's attorney. The attorney asked the plaintiff what he had done with the last previous payment of $1,700 made on August 17. The plaintiff produced some receipts for payments which, with a sum paid for labor, amounted to nearly $500 less than the $1,700. The plaintiff said it would cost $3,735 to complete the job from August 15. He said he could get the needed material on credit, but would need money for his payroll; that he "would not hire men without knowing how he was going to pay them"; that if "the Wards" would pay for the labor he would complete the job, and if at the end of the

forty-three day period no liens had been filed "the Wards could pay him the contract price plus $300–$400 for extras." The defendant's attorney replied that the defendant would not be interested in this, and on the following day sent the notice directing the plaintiff to cease work. Shortly thereafter the defendant employed another person to complete the job. In the week ending September 7 the plaintiff had employed only one man outside his own family and had been unable to pay him $20 of the $30 due him for that week.

The master's findings hereinbefore stated are adequate to show that even if the plaintiff had not by September 11 actually broken the contract so that the defendant then had a cause of action against him, yet the course taken by the defendant was justified and was not a breach of the contract on her part. The pertinent rule of law is set forth in Am. Law Inst. Restatement: Contracts, § 280, (1), in these words: "Where there are promises for an agreed exchange, if one promisor manifests to the other that he cannot or will not substantially perform his promise, or that, though able to do so, he doubts whether he will substantially perform it, and the statement is not conditional on the existence of facts that would justify a failure to perform, and there are no such facts, the other party is justified in changing his position, and if he makes a material change of position he is discharged from the duty of performing his promise." This statement of the law is supported by our own cases of *Hobbs* v. *Columbia Falls Brick Co.* 157 Mass. 109, *Earnshaw* v. *Whittemore*, 194 Mass. 187, 191–192, and *Ragan* v. *Dyer*, 272 Mass. 495. See *Stephenson* v. *Cady*, 117 Mass. 6; *Naylor* v. *Fall River Iron Works Co.* 118 Mass. 317; *Jones* v. *Le May-Lieb Corp.* 301 Mass. 133, 135; Am. Law Inst. Restatement: Contracts, §§ 278, 287, 298, 323, 398; Williston on Contracts (Rev. ed.) § 875. This principle must not be confused with the doctrine of recovery for anticipatory breach, rejected in this Commonwealth by *Daniels* v. *Newton*, 114 Mass. 530.

This case is well within the rule just quoted from the Restatement. The plaintiff's promise to build the house and the defendant's promise to pay for it were clearly "an

agreed exchange." The plaintiff's statements that he would need money for his payroll, that he would not hire men without knowing how he was going to pay for them, and that he would complete the job if "the Wards" would pay for the labor amounted to a manifestation that he could not or would not complete the house unless the defendant would advance him money in excess of that called for by the contract. This was a refusal to perform in a substantial respect. The master's report shows that the fair value of the labor and material then required to complete the contract was a quarter or more of the contract price. A great deal remained to be done. It was not a matter merely of delay. Apparently the plaintiff would never finish the house unless the defendant took the risk of making advances to him which she was not required to make. Faced with this dilemma, she changed her position by employing another man to finish the job.

Enough has been said to show that the plaintiff cannot recover upon the contract itself or upon quantum meruit based upon any theory that a wrongful repudiation by the defendant could be treated by the plaintiff as a rescission.

Neither can the plaintiff recover upon quantum meruit on the theory of *Hayward* v. *Leonard,* 7 Pick. 181, and the many cases following that case. We pass over any difficulty in finding the substantial performance required by that theory where so large a proportion of the work remained unperformed. See *Bowen* v. *Kimbell,* 203 Mass. 364; *Handy* v. *Bliss,* 204 Mass. 513, 518–519; *D'Urso* v. *Leone,* 238 Mass. 58, 61; *Smedley* v. *Walden,* 246 Mass. 393, 400; *Hub Construction Co.* v. *Dudley Wood Works Co.* 274 Mass. 493, 496; *Glazer* v. *Schwartz,* 276 Mass. 54, 57. An insurmountable obstacle remains in that what the master calls the "fair value"[1] of the labor and material required to complete the contract, when added to the amount already paid as "Progress Payments," amounts to as much as the contract price. See as to the method of ascertaining damages on quantum meruit *Norwood* v. *Lathrop,* 178 Mass. 208, 210–211; *Glazer*

[1] It is evident from the report that by "fair value" the master means fair cost.

*v. Schwartz*, 276 Mass. 54, 57; *Soares* v. *Weitzman*, 281 Mass. 409; *Baccari* v. *B. Perini & Sons, Inc.* 293 Mass. 297, 302; Williston on Contracts (Rev. ed.) §§ 1480–1483.

The plaintiff is not entitled to recover for so called extras. Although the master finds that extra work was agreed upon to the "maximum amount" of $920.51, it appears that charges for the items making up this amount were included in the statements of labor and material furnished by the plaintiff twice a month as the basis for "Progress Payments," and that eighty-five per cent of all "extras" was paid for by inclusion in the "Progress Payments" made by the defendant to the plaintiff. We think that the course of dealing of the parties sufficiently shows that by mutual understanding the agreements for changes that gave rise to the "extras" were treated by the parties as modifications of the contract itself and not as collateral agreements, and that the claims for "extras" became merged into the principal contract and are not now to be dealt with separately.

The defendant included a counterclaim in her answer. The master finds that he is not convinced that when the defendant ordered the plaintiff to stop work on September 11, the plaintiff "had then violated any affirmative obligation for which he is liable in damages." Whether in view of the fact that, as we decide, the plaintiff's conduct justified the defendant in removing the plaintiff from the job, the defendant did have a cause of action against the plaintiff for not finishing the house after a reasonable time for finishing it had elapsed we need not consider, since there are no findings of damage, and various findings tend to indicate that there was none. We think the decree should be modified by dismissing the counterclaim. See *Blume* v. *Oil-O-Chron, Inc.* 287 Mass. 52, 55; *Pearson* v. *Mulloney*, 289 Mass. 508, 511; *Gulesian* v. *Newton Trust Co.* 302 Mass. 369, 370–371.

There is obviously nothing in the record upon which the defendant Quincy Trust Company can be held.

> *As modified, the final decree is affirmed*
> *with costs to the defendant Ward.*