**PEERLESS CAS. CO.**

v.

**WEYMOUTH GARDENS, Inc.**

No. 4831.

United States Court of Appeals First Circuit.

Aug. 24, 1954.

John S. Whipple, Boston, Mass. (Douglas Danner and Peabody, Arnold, Batchelder & Luther, Boston, Mass., with him on brief), for appellant.

Marcien Jenckes, Boston, Mass. (John L. Hall, John B. Reigeluth and Choate, Hall & Stewart, Boston, Mass., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action brought for the penal sum of a bond conditioned on the faithful performance of a contract for the construction of a group of small dwelling houses. The case was referred to a master who after hearing filed a detailed report containing findings of fact and rulings of law on the basis of which he concluded that the defendant was liable to the plaintiff for the full amount of the bond ($75,000) with interest thereon from the date of demand. The District Court, after a hearing on the plaintiff's motion to confirm the master's report and the defendant's objections thereto, adopted the master's findings of fact, and, concluding that there was no error in the master's rulings of law, entered the judgment for the plaintiff from which the defendant has taken this appeal.

Federal jurisdiction under Title 28 U.S.C. § 1332(a) (1) based on diversity of citizenship and amount in controversy is alleged and clearly established.

No useful purpose would be served by stating the voluminous and complicated facts in full detail. It will suffice to summarize them briefly and then to proceed at once to a consideration of the contentions of the appellant which seem to us of sufficient moment to warrant discussion.

The bond in suit was given to secure the performance of a fixed cost contract for the construction of a group of small houses in Weymouth, Massachusetts entered into in May, 1950, between Weymouth Gardens, Inc., a Massachusetts corporation, as the owner, and Weymouth Construction Company, Inc., another Massachusetts corporation and the principal on the bond, as the builder. The latter apparently began construction at once but soon ran into difficulties, for with the advent of hostilities in Korea in June there sprang up a system of priorities with resultant shortages of materials and increases in prices. Furthermore, many building materials, temporarily at least, vanished from the market altogether. These factors severely interfered with construction. Further-

more in August the construction company began to feel the effects of lumbermen's and teamsters' strikes which further increased the cost of materials. In consequence the houses were not completed within ninety days as the contract required. Nevertheless the builder strove to maintain construction in spite of the financial pressures and other difficulties under which it labored. It became evident in February, 1951, however, that it would not be able to finish the houses and later that month it abandoned the job altogether.

The defendant bonding company through one of its vice-presidents knew of the delay in completing the houses, and the reasons therefor, as early as August, 1950, but took no action on that information. The plaintiff notified the defendant by ordinary letter on March 19, 1951, that the contract was in default, and on April 6 the plaintiff gave notice of that fact again, this time by registered letter in conformity with the notice provision of the bond. Promptly thereafter the defendant signified its election not to avail itself of its option to complete the contract, or to sub-let the completion thereof, and the plaintiff thereafter completed construction at an additional cost substantially in excess of the penal sum of the bond.

The appellant's first contention is that the master's finding that the excess cost of completing the houses was due to economic restrictions engendered by the hostilities in Korea rather than by fault of the contractor requires the entry of a judgment in its favor. The argument is that the above finding by putting the blame for the unanticipated increase in the costs of construction on the Korean conflict instead of on any fault of the contractor absolves the latter from liability for non-performance, and, since the contractor could not be held for breach of contract, the surety cannot be held for the reason that the obligation of a surety coexists with the obligation of the principal and is extinguished when the obligation of the principal comes to an end. In short, the defendant-appellant says that

the master's finding that the hostilities in Korea made it impossible for the principal to perform its contract absolves the surety because an impossibility which excuses a principal also excuses a surety.

We do not quarrel with the general principle of law upon which the appellant relies. The trouble with the appellant's contention is that it rests upon a misinterpretation of the master's findings. He did not find that the conflict in Korea, with its resultant economic dislocation, made it impossible ever to perform the construction contract. Indeed, he could hardly have made such a finding in the face of the established fact that the houses eventually were built while hostilities in Korea continued.

■■ The master's findings are that dislocations in this country's economy caused by the Korean conflict made it impossible for the contractor to finish the houses on time, and thus excused it from that feature of the contract, but that it was the contractor's financial inability to cope with those economic dislocations which made it unable to complete the houses at all. Certainly unexpected increases in cost is a risk every contractor takes in entering into a fixed price contract like the one under consideration here. And an increase in costs caused by the unexpected outbreak of a war does not constitute the intervention of a superior force which ends the obligation of a valid contract by preventing its performance. Columbus Ry. & Power Co. v. City of Columbus, 1919, 249 U.S. 399, 39 S.Ct. 349, 63 L.Ed. 669. The principal undertook the contractual duty to build the houses regardless of cost and at least one purpose of the bond was to secure performance of that duty regardless of the principal's financial capacity to carry out its obligation.

The appellant's second contention is that it is relieved of any liability by the plaintiff-appellee's failure to give it notice by registered letter mailed to its home office of the contractor's breach of contract within a reasonable time after the breach occurred as required by the terms of the bond. The argument in a

nut shell is that a breach of contract occurred in August, 1950, when the contractor failed to complete the houses within the time limit imposed, but that it was not legally notified of any breach of contract until April, 1951, about eight months later, which cannot possibly be considered "within a reasonable time" as required by the third condition precedent of the bond.

The fallacy in the argument lies in its assumption that the principal's breach of contract occurred in August, 1950, when it became obvious that none of the houses could be completed within the ninety day time limited by the contract. It is true that there was a failure to comply with the terms of the contract in this respect. But the master found and the appellant itself emphasizes that finding in its first contention on this appeal, that that failure was excused, or rendered non-actionable, by a supervening impossibility. Therefore this is not a case in which a breach of contract occurred in August, 1950, which the obligee-owner waived, thereby extending the surety's obligation on its bond. It is a case of failure to comply with the time limit for construction specified in the contract, but not a breach of that term of the contract, for the master found that compliance with that provision was impossible because of the effect of the hostilities in Korea on the economy of the country. The first actionable breach of contract occurred in February, 1951, when the principal abandoned the job. In view of the fact that for months prior to that time the surety's vice-president in the area knew of the principal's difficulties but did nothing, apparently in the hope that the principal would eventually complete the houses and relieve it of liability on the bond, and the fact that the surety was notified informally, that is by ordinary letter, on March 19, 1951, a few weeks after the breach, we do not think that it must be said that formal notification of default on April 6, 1951, by registered letter in strict compliance with the condition precedent of the bond was not "within a reasonable time" after breach.

Other contentions advanced by the appellant have on consideration been found too insubstantial to warrant discussion.

The judgment of the District Court is affirmed.