**GREEN MANOR CONSTRUCTION CO.,**
Inc., et al., Defendants, Appellants,

v.

**HIGHLAND PAINTING SERVICE, INC.,**
et al., Appellees.

No. 6425.

United States Court of Appeals
First Circuit.

Heard April 5, 1965.

Decided May 18, 1965.

Lee H. Kozol, Boston, Mass., with whom Charles G. Kadison, Jr. and Friedman, Atherton, Sisson & Kozol, Boston, Mass., were on brief, for appellants.

Joseph M. Corwin and Robert J. Sherer, Boston, Mass., with whom Frederick W. Roche, Roche & Leen and Corwin & Corwin, Boston, Mass., were on brief, for appellees.

Before ALDRICH, Chief Judge, and MARIS * and BURGER *, Circuit Judges.

ALDRICH, Chief Judge.

These are diversity cross actions in contract between Highland Painting Services, Inc., a subcontractor, and Green Manor Construction Co., Inc., a general contractor, on a government housing project. The respective bonding companies were joined as parties. Suit was instituted by Highland in July 1959 alleging wrongful termination of the contract on January 27, 1959 and seeking to recover the value of work, including extra work, performed thereunder. Green Manor's answer admitted the execution of the contract, alleged it was terminated May 28, 1959 (which we believe was a misstrike for January 28, 1959) and generally denied the remaining allegations. By way of counterclaim it alleged that it terminated the contract on January 28, 1959 because of Highland's breach and was obliged to employ another painter to remedy Highland's defective work and to do unfinished work, and sought damages therefor. The reply to the counterclaim was that the breach had been Green Manor's. Various other pleadings are not presently relevant. The case was referred to a master, whose comprehensive report was, with now immaterial exceptions, confirmed by the court. From judgments in Highland's favor on the complaint and on the counterclaim Green Manor appeals.

The principal dispute concerns the termination of the contract. Although the parties took no such position, and each charges a wrongful termination by the other, not only in the pleadings, but also in the requests for findings, the master found that the termination was "by mutual agreement, although the same was never expressed in so many words."

* By designation.

This discovery on his part is supported by no evidence in the record. Although Highland now asserts two subsidiary matters which we will come to, its principal argument in support of the master's position is that he "was entitled to infer, as he apparently did, that the truth lay somewhere between the conflicting extremes testified to by the presidents" of the two companies. As will be shown later, this was an erroneous application of that principle. Nor was the master's conclusion supported by the necessary subsidiary findings, sound or otherwise.

Although we do not discover in the record that Green Manor knew it initially, Highland had never before undertaken a job of this consequence. Prior to submitting its bid it discussed the work with Green Manor and said that it could accomplish it. After the bid had been accepted Green Manor offered to assist Highland with advice in scheduling, etc., but this offer was rejected. From the beginning Highland was undermanned and undersupervised, fell behind generally, and did unsatisfactory work in various respects. Green Manor complained continually. It twice sought to terminate the contract, but relented when Highland promised to improve. Highland did not keep its promises. Finally, with Highland's knowledge and "acquiescence" Green Manor brought in another painting concern, Garbutt, to expedite the work. This was done in response to government complaints about delay. On January 28 Highland walked off the job. At that time it was in default in several respects. Although at the trial it sought to show that Green Manor had been in default, and had impeded its work, the master resolved these issues against it. He further found that Highland was incapable of doing the work, and that Green Manor knew, or should have known, this before the contract had been entered into.

Some hours after Highland abandoned the job without request or excuse, it asked Green Manor for a termination notice.[1] Green Manor thereupon sent a telegram which, after referring to the prior termination notices, said, "BE ADVISED OF TERMINATION OF YOUR CONTRACT ORDER B-0913 YOU HAVE FAILED TO CONFORM WITH THIS CONTRACT ORDER IN EACH AND EVERY RESPECT." According to Highland, on oral argument, the master drew the conclusion that the contract was terminated by mutual agreement from this telegram, aided by the fact that Green Manor knew or should have known of Highland's incapacity, and by the fact that Garbutt had been brought in to remedy Highland's deficiencies.

Highland's argument was not how the master put it. His concluding finding was that "Since" Green Manor entered into the contract with knowledge of Highland's lack of experience and ability, "and since" there was an agreement that Green Manor would employ Garbutt "to assist Highland Painting without effect upon Highland Painting's entitlement to recover its full subcontract price, and since" the subcontract was "terminated by mutual agreement, tacit or express," Green Manor cannot recover for breach of contract, although it would be allowed a setoff, against Highland's *quantum meruit* recovery, for the cost of correcting the work that Highland had already performed. This finding is totally unsupportable, either fully or in part. Even if Green Manor knew Highland lacked experience, where Highland had contracted to do the work it is scarcely a defense for nonperformance that its capacity should have been sus-

---

1. Highland's testimony at the trial was that it had not voluntarily abandoned the job, but had been ordered off by Green Manor, and that it requested a notice "to make it official." The master found that there had been no request to Highland to leave the job, but did find that Highland asked for a notice. If this was inconsistent nothing turns on it. Moreover, even though Highland left of its own accord, it was not necessarily inconsistent because of its position, vigorously maintained at the trial, that Green Manor, not it, was in default, for it to want a written record.

pect.[2] Nor could even the most naive contractor think that the risk of his capacity was assumed by the other party when he was required to be bonded. Citation for the principle that the promising party takes the risk seems hardly necessary. However, see Rowe v. Inhabitants of Peabody, 1911, 207 Mass. 226, 93 N.E. 604; Peerless Cas. Co. v. Weymouth Gardens, Inc., 1 Cir., 1954, 215 F.2d 362, 364; Restatement, Contracts § 455. We cannot conceive how business could be done on any other basis.

■ As to the asserted agreement that Garbutt would "assist" Highland at Green Manor's expense without affecting Highland's right to the full contract price, it is not clear whether this language meant assist Highland by doing new work, or by correcting the old. If the latter, it is inconsistent with the master's finding that Green Manor was entitled to charge Highland for this assistance. If by assist he meant replace Highland on the new work we cannot believe that, no matter how he expressed it, the master thought Green Manor was going to pay both parties when Garbutt did the work. Even if all that was meant by this finding was that there was an agreement that Garbutt was to be paid for new work without affecting Highland's rights to be paid for what it had already done without deduction for damages caused by its breach of contract, there is nothing in the record to support any such charitable agreement, unless it be an inference from the master's finding that the parties mutually terminated the contract. We turn, therefore, to that.

■■ An agreement to terminate a contract, like all agreements, is not something which parties fall into unawares, but requires an offer, an acceptance, and a bargained-for consideration. 6 Williston, Contracts § 1826 (Rev.Ed., 1938). No one of these elements was present here. The first step towards termination was that Highland abandoned the work. If Highland considered this an offer for mutual rescission, it did not so phrase it, nor, as we have pointed out, did it so construe it later. Nor did Green Manor indicate either an offer or an acceptance of a mutual termination by its telegram cancelling the contract for Highland's default. Finally, and equally important, nothing was given or received as legal consideration, since there were neither words nor acts the effect of which would annul the contract and release the other party from liability. See Hanson & Parker, Ltd. v. Wittenberg, 1910, 205 Mass. 319, 326–327, 91 N.E. 383; United Fruit Co. v. United States, 1951, 1 Cir., 186 F.2d 890, 895. The pertinent events comprised two purported terminations for cause. Each staked his all on the throw. The "conflicting extremes testified to by the presidents," supra, were that the other party had broken the contract. The possible half-way position between them was that both had cause to terminate. The master did not adopt that, but found only Highland to be in default. There was no basis of any sort for a conclusion that they terminated by mutual agreement.

■ On the master's other findings, which are against Highland, and which are supported by the evidence, and from which Highland does not appeal, we reach the question of what are the consequences to Highland from losing the gambit above stated. The first consequence is that on the basis of a deliberate unexcused default Highland had no legal claim to recover on the contract or on *quantum meruit*. On the master's findings there had been no substantial performance. Rather, less than half the work had been done. Cf. Nevins v. Ward, 1946, 320 Mass. 70, 74, 67 N.E.2d 673 (approximately three-quarters performance not substantial). See, in general, Hub Construction Co. v. Dudley Wood Works Co., 1931, 274 Mass. 493, 175 N.E. 48; Russo

---

**2.** This lack of capacity is supposed to excuse such matters as two coats of paint (discovered by secret government marks) when the specifications called for three, and the refusal to supervise the work when supervision is standard practice even on much smaller jobs.

v. Charles I. Hosmer, Inc., 1942, 312 Mass. 231, 44 N.E.2d 641. There is no validity whatever in Highland's claim that because Green Manor permitted it to continue with the work after Highland had demonstrated its inabilities Green Manor incurred a separate obligation to pay on a *quantum meruit* basis. It would be unheard of to hold, as we are constantly importuned here to do, that a businessman who makes a contract, fails to perform, repeatedly asks to be given another chance and is given it, should be able to turn around and say that ordinary contractual principles should not apply to him because he is not a good workman.

 Highland had also undertaken some extra work. This was by government change orders effected pursuant to the contract, and accordingly, as the master expressly found, this work was done under the contract. Substantial default elsewhere under that contract should preclude recovery here. Nevins v. Ward, supra, 320 Mass. at 75, 67 N.E. 2d 673. However, even if the extra work were by separate contract, a comparison of the orders and of the proportionate amount of payments which the master found had been earned thereunder when Highland ceased work shows that even viewed separately there had not been substantial performance.

 Lastly, Highland seeks to recover for unused supplies, largely paint, left at the job site. Since there was one total contract price for labor and materials, presumably the same rule should apply. However, this question is not of practical importance because, since we hold that Green Manor is entitled to recover on its counterclaim, Highland gets an automatic credit thereunder for the value of these supplies used by Garbutt, since they reduced Garbutt's costs. So far as the counterclaim is concerned, even though Highland made an intentional breach it is, in effect, entitled to credit on a *quantum meruit* for all work and supplies actually furnished, since the

measure of recovery is, essentially, "the reasonable cost of completing the contract and repairing the defendant's defective performance less such part of the contract price as has not been paid." DiMare v. Capaldi, 1957, 336 Mass. 497, 502, 146 N.E.2d 517, 521. Ficara v. Belleau, 1954, 331 Mass. 80, 117 N.E.2d 287. This was never determined, and the case must be remanded for that purpose. We might remark, however, that the master shows no justification for disregarding completely what it actually cost Green Manor to have Garbutt do the work on a cost plus basis simply because he believed it would have been cheaper to let bids. There was, of course, no requirement that Green Manor complete the work in any particular manner. The issue was not what it paid, but what was the reasonable cost. At the same time, the cost that Green Manor incurred, having in mind that it could not have felt sure of its ability to charge back against Highland, is at least some evidence of the fair cost. The master may, which we need not determine, have been entitled to find, as he did, that the work "could have been done at less expense." However, the following quotation from Hunt Co. v. Boston Elevated Ry. Co., 1908, 199 Mass. 220, at 235, 85 N.E. 446, at 450, is most apposite.

"On the other hand if the auditor knew enough about the subject in question to reject the evidence of this expert as putting the value too high, it is hard to see why he did not cut it down to the proper amount. And it is certainly a *non sequitur* to come to the conclusion that no damages were due."

The other contentions of the parties do not call for comment.

Judgment will be entered vacating the judgments of the District Court and the order confirming the master's report, and the case is remanded to the District Court for further proceedings consistent herewith.