Fremont-Smith, J.
The plaintiffs move for summary judgment establishing a breach of contract by the defendant environmental consulting firm, GZA Geo-Environmental, Inc.
For the reasons stated below, plaintiffs’ motion is allowed.
The following facts are not materially disputed:
In 1990, fourteen corporations that are the plaintiffs in this action were ordered by the United States Environmental Protection Agency (“EPA”), to perform certain so-called “remedial actions” in connection with an environmental clean-up under the federal “super-fund” law. In order to carry out this clean-up, the plaintiffs formed themselves into an unincorporated association known as the Landfill & Resource Recovery Site Participation Group (the “L&RR Group”). In June of 1990, EPA issued a specific directive known as an Administrative Order to some members of the L&RR Group, directing, inter alia, that they create a “remedial design” for the environmental clean-up. The specifications for the remedial design workplan were incorporated in a technical document called a Scope ofWorkwhich EPAmodified once, on October 19,1990 (the “EPA SOW").
In September of 1990 the L&RR Group sought a proposal from a number of environmental consulting firms, including GZA, to perform the remedial design work that was set out in five specific sections of the EPA SOW. The bids were sought on a “lump sum not to exceed basis.”
In October 1990, GZA submitted a proposal to the plaintiffs to perform specific, designated engineering design services, wherein GZA offered “to complete the limited services described in this document” for a lump sum amount of $494,000. The proposal also envisaged design costs of approximately $600,000, “should the EPA require field tests for all three thermal destruction methods.” Although no formal agreement had yet been entered into, GZA commenced work on three designated tasks described in GZA’s proposal, for a maximum guaranteed price of $63,000.
On May 30, 1991, GZA entered into the formal contract (the “Agreement”) which is at issue in this case pertaining to the EPA SOW. Pursuant to the Agreement, GZA agreed to perform the remedial design services in accordance with the standards set forth in the EPA Scope of Work (SOW) and agreed to provide the services specified in the SOW "through and including EPA Approval of Final Design,” in return for payment by the plaintiffs of a lump sum amount of $594,000. The EPA SOW was attached to the Agreement as Appendix C and was expressly incorporated by reference therein. The SOW was not, at any subsequent time, changed by EPA. Work was to commence immediately, it being recognized that there were “critical delivery dates” to be met. The Agreement specified that it comprised the entire agreement between the parties and “supersedes prior oral or written agreements with respect to matters addressed herein.”
GZA entered into the Agreement with plaintiffs just one day prior to EPA’s letter, dated May 31, 1991, notifying plaintiffs that GZA’s workplan was substantially deficient in a number of respects and failed to meet the requirements of the EPA SOW. The letter advised that the GZA workplan would have to be revised so as to address numerous additional details regarding the specific tasks which would be required so as to enable the environmental remediation to be carried out.
Upon receipt of EPA’s communication of non-acceptance of its workplan, GZA stopped work, and a series of negotiations with plaintiffs ensued. Then, by letter dated October 1, 1991, GZA advised plaintiffs that it would resume performance of the design work required by the Agreement upon execution by the plaintiffs of a contract to pay GZA an amount in excess of $1,800,000, and “required” that plaintiffs respond to GZA’s proposal by October 7, 1991, i.e. within just seven days. On October 9, 1991, the plaintiffs gave written notice to GZA that they considered it to be in default.
*94 DISCUSSION
Entry of summary judgment is proper where there is no genuine dispute as to any material fact so that a party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); King v. Globe Newspaper Co., 400 Mass. 705, 719 (1987); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56(c). A dispute as to an issue of fact must be genuine, that is, it cannot be a metaphysical doubt as to whether a given fact is true. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586 (1986); Kourouvacilis v. General Motors, 410 Mass. at 716. Moreover, only disputes concerning facts which will affect the outcome of the litigation are considered “material” for purposes of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute between the parties as to “irrelevant or unnecessary” facts will not defeat an otherwise proper motion for summary judgment. Id. “The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.” Id. at 247-48 (emphasis in original).
In order to avoid the contract, GZA has the burden to prove a viable defense by coming forward with evidence such as would enable a reasonable trier of fact to find in its favor.
Here, it is undisputed that GZA and the plaintiffs entered into a written agreement wherein GZA promised to perform remedial design services as specified in the EPA SOW, “through and including EPA Approval of Final Design,” in return for which GZA was to be paid a lump sum amount of $594,000. Section 1 of the Agreement, entitled “Scope of Work,” describes the design work that GZA agreed ... to provide in terms of the tasks set out in the EPA SOW, including six “Deliverables” that were specifically required by the EPA SOW. The Agreement, in section 1(b), then listed the sections of the EPA SOW (VI.A., VI.B.(1)(2) and (3), and VI.C.) that set forth the specifications for each of these “Deliverables.” The EPA SOW (and the technical requirements for the Deliverables it contains) was made an appendix to and part of the Agreement.
Contrary to defendant’s argument, there is no ambiguity or lack of clarity in these provisions. GZA, in accord with its expertise, was to perform the remedial design for the environmental clean-up consisting of six “Deliverables” through and including “EPA approval of the final design” of the workplan, for which GZA would be paid a lump sum of $594,000. The Agreement, moreover, contains an integration clause stating that it “constitutes the entire Agreement between the parties and supersedes prior oral or written agreements with respect to the matters addressed herein.” Such an integration clause is, of course, enforceable against a party who signs a contract containing it, and bars parole evidence of earlier written or oral agreements. Bendetson v. Coolidge, 7 Mass.App.Ct. 798, 802-03 (1979), quoting Glackin v. Bennett, 226 Mass. 316, 319-20 (1917) (“where the writing shows on its face that it is the entire agreement of the parties and ‘comprises all that is necessary to constitute a contract, it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction’ ”).
GZA now argues that it did not agree to perform the remedial design “through and including EPA approval of Final Design,” but only agreed to perform certain “specific tasks” set forth in its earlier (October 1990) proposal, which GZA believed (wrongly, as it turned out) would “address the EPA’s needs” and would “satisfy the intent” of the EPA SOW. See Powers Dep., tr. 45-46, 48.
Whatever may have been GZA’s expectation or intention when it signed the agreement on May 30,1991, however, the language of the Agreement is unqualified and clear. The Agreement does not provide that GZA shall perform only the least amount of work that EPA might be expected to approve, or perform only the specific tasks described in GZA’s earlier October 1990 proposal. Rather, the Agreement is unequivocal in providing that GZA will perform the services “through and including EPA approval of Final Design.” The fact that EPA immediately thereafter communicated its disapproval of GZA’s initial workplan submitted to the EPA may have shattered GZA’s expectations, but does not alter the clear meaning of the contract or make parol evidence (such as GZA’s October 1990 Proposal or the correspondence between the parties) admissible to vary its terms.
An element of prediction of the future is, of course, inherent in the performance of many contracts, and the fact that one of the parties turns out to have misapprehended the cost or expense for performance will not ordinarily justify non-performance. See Peerless Cas. Co. v. Weymouth Gardens, Inc., 215 F.2d 362, 364 1st Cir. (1954) (“[cjertainly unexpected increases in cost is a risk every contractor takes in entering into a fixed price contract...’’). See also Ross v. Friedman, 22 Mass.App.Ct. 513, 517 n.8 (1986), quoting 3 Corbin, Contracts, §605.
As the Agreement between GZA and the plaintiffs was clearly a binding, integrated contract, which superseded any prior agreements of the parties respecting the matters contained therein, it is to be enforced in accordance with its terms. GZA’s refusal to perform in accordance with the terms of the Agreement,[1] therefore, constituted a breach.
ORDER
Accordingly, plaintiffs’ motion for summary judgment on liability on Count I of the Complaint, is *95 ALLOWED, and summary judgment is allowed in favor of the plaintiffs on defendant’s counterclaim, which is hereby dismissed.

 In view of the necessity for timely completion of GZA’s design services, clearly recognized by the parties in the Agreement, there is no reasonable basis upon which a jury could find that GZA, by its words and conduct, has not refused to carry out the contract in accordance with its terms.