Norris *v.* School District No. 1, in Windsor.

## NORRIS *vs. School District No.* 1, *in* WINDSOR.

Where one party has entered into a special contract to perform work for another and furnish materials, and the work is done and the materials are furnished, but not in the manner stipulated in the contract, yet if the work and materials are of any value and benefit to the other party, he is answerable, to the amount whereby he is benefited.

*Debt* will lie in such case, as well as *assumpsit.*

Where the inhabitants of a school district, in a suit against them for the building of a school-house, repudiated the special contract on which the action was founded, denying that it had ever been accepted by them, though executed by the plaintiff, and it was proved that the district had agreed to build the house, raised money for the purpose, chose a committee to superintend the building, and said committee and inhabitants had seen the work progress without objection, it was held that the inhabitants of the district were liable to pay what the house was reasonably worth, though not built agreably to the terms of the special contract.

The circumstance that the district did not own the land upon which the house was erected, was held not to affect the plaintiff's claim — it appearing that the house had been erected on the spot designated by a vote of the district for that purpose.

THIS was an action of *debt.* The writ contained several counts, the principal one being founded upon a contract under seal, executed by the plaintiff in favor of the defendants, in which the plaintiff covenanted and agreed to build a school-house according to certain stipulations therein contained. The plaintiff read this contract in evidence, after having called it out of the hands of one of the defendants for that purpose. In regard to the acceptance of it by the defendants, there was evidence on both sides, and the jury found that it had never been accepted.

It was proved that the defendant had erected the house upon the place designated for that purpose by a vote of the district,

though the land was not owned by the district. In some other respects the house was not built in conformity to the terms of the special contract; and the action was commenced before the time fixed in the contract when the house should be finished.

During the progress of the building no objection was made to the work or materials by either of the defendants, or by the committee who had been chosen by the district for the purpose of superintending the building, except in one instance, when one of the committee complained of the quality of the shingles.

No notice appeared to have been given to the defendants that the house had been finished, or demand made on them for payment, prior to bringing the action.

The counsel for the defendants contended, 1. That *debt* would not lie for unliquidated damages, but that the plaintiff must recover, if any thing, $260, the sum alleged to have been agreed to be paid on the part of the defendants. But the Chief Justice, who sat in the trial, overruled the objection.

2. That if an *express* contract had been made, the plaintiff could not recover upon an *implied* undertaking, on the part of the defendants, nor until he had shown a performance of the contract on his part, and that as the plaintiff had opened the case upon this ground, and all the testimony upon both sides had been directed to that point, the defendants were at liberty to deny that any contract had been proved, without thereby giving the plaintiff a right to change the ground of his claim.

3. That if there was proof of an *express* contract on the part of the plaintiff, the defendants could not be holden on an *implied* agreement on their part, until the plaintiff had shown a performance of his express agreement.

4. That if the plaintiff had entered into an obligation for a given sum to build a house of a specific description, he could not recover that sum, without showing a performance on his part. Nor could he recover any less sum, without showing an acceptance by the defendants of the work and labor furnished by him, upon which an implied obligation would arise.

5. That no proof had been offered to show at what time the payment was to be made, and that as the action was commenced prior to the day when, by the terms of the plaintiff's ob-

ligation, the building was to be finished, he could not maintain his action, without proving notice to the defendants that the building was completed, and a demand of payment, and giving a reasonable time for the money to be drawn from the town treasury upon warrants from the selectmen.

6. That an objection by one of the committee to the materials used, was a sufficient notice to the plaintiff that the building would not be accepted, unless a majority of the committee should authorise the use of them.

The presiding Judge instructed the jury as to the law of the case, if the plaintiff had not fully complied with the special contract, as the work had proceeded under the eye of the superintending committee, as no objection had been made by them, except by *Keene*, in regard to the shingles, in which it did not appear that any other member of the committee had concurred, and as he witnessed the other and the greater portion of the work go on without making further objection, there might well be implied an obligation on the part of the district to pay, what under all the circumstances, as far as the building was, or might have been beneficial to them, in the opinion of the jury, justice might require. And that in so doing, they would make all reasonable and proper deductions in favor of the defendants. That, they would consider whether the plaintiff did not intend to have fulfilled his contract, as *Clary* and *Cottle*, to whom the business had once been confided, appeared to have been satisfied with what the plaintiff had done. The Judge left it to the judgment and experience of the jury, in cases of this kind, to determine whether the plaintiff was entitled to anything in justice and equity, and if anything, how much. And upon a contract thus implied, he instructed them that no special notice or demand prior to the bringing of the action was necessary.

A verdict was returned for the plaintiff for $216. If they were properly instructed, judgment was to be rendered thereon, otherwise it was to be set aside and a new trial granted.

*Evans* and *Vose*, argued in support of the positions taken at the trial, citing the following authorities : *Taft* v. *Montague*, 14 *Mass.* 282 ; *Faxon* v. *Mansfield*, 2 *Mass.* 147 ; *Story on Bailments*, 287 ; *Jennings* v. *Campbell*, 13 *Johns.* 94 ; 1 *Dane's*

*Abr.* 223 ; 2 *Dane's Abr.* 45 ; *Ellis* v. *Hammond,* 3 *Taunt.* 52 ; *Stark* v. *Parker,* 2 *Pick.* 267 ; *Willington* v. *West Boylston,* 4 *Pick.* 101 ; *Whiting* v. *Sullivan,* 7 *Mass.* 109 ; *Cutter* v. *Powell,* 6 *T. Rep.* 320 ; *James* v. *Bixby & al.* 11 *Mass.* 40 ; 1 *Com. on Con.* 5 ; *Phelps* v. *Townsend,* 8 *Pick.* 392 ; *Brazier* v. *Clark,* 5 *Pick.* 96 ; *Bonniface* v. *Walker,* 2 *T. Rep.* 126 ; *Clark* v. *Ins. Co.* 7 *Mass.* 371 ; *Colley* v. *Sampson,* 5 *Mass.* 312 ; *Reed* v. *Davis & al.* 8 *Pick.* 514 ; 1 *Chit. Pl.* 106 ; 5 *Dane's Abr.* 101, 103,104, 326, 327.

*Emmons,* for the plaintiff, cited *Smith* v. *First Congregational Meeting-house in Lowell,* 8 *Pick.* 178 ; *Hayward* v. *Leonard,* 7 *Pick.* 181 ; 2 *Saund.* 117, notes *a, c, d* ; 1 *Chit. Pl.* 105.

PARRIS J. delivered the opinion of the Court.

It may now be considered as the settled law that where one party has entered into a special contract to perform work for another and furnish materials, and the work is done and the materials are furnished, but not in the manner stipulated in the contract, yet if the work and materials are of any value and benefit to the other party he is answerable to the amount whereby he is benefited. *Hayward* v. *Leonard,* 7 *Pick.* 181 ; *Cutler* v. *Close,* 5 *Carr. & Payne,* 337 ; *Roscoe's ev.* 221

In the case at bar it was proved that the defendants, at a legal meeting, voted to build a school-house, raised money for that purpose and appointed a committee to superintend the building, and also determined upon the place where the house should be erected. With this committee the plaintiff entered into an agreement, under seal, to erect the house. The defendants contend that no contract was made that could bind or affect them, inasmuch as the written instrument was never accepted or ratified by them or their committee. If it were so, and there was no mutuality in the written contract, then the case stands as if no special agreement had been made, and the written instrument has no operation in the case.

The plaintiff, under the superintendence of the committee appointed for that special purpose, erects the house on the spot designated by the district, expends his money in providing materials, his labor in accomplishing the work ; the committee give

directions; occasionally some member expresses doubts or dissatisfaction as to the quality of the materials, but still acquiescing they permit the work to go forward, and after the whole is completed, attempt to avoid payment, contending that they have derived no benefit from the plaintiff's work or materials, because the district did not own the land where the building had been erected, in pursuance of the vote of the district and the directions of the committee.

But the plaintiff's claim to remuneration is not to be met in this manner. To him it is of no consequence who owned the land. It is sufficient for him to show who set him at work, and when he proves that the defendants agreed in a legal manner to erect a house on that spot, and appointed a committee to superintend its erection, and that he was employed by such committee, in pursuance of their authority, to perform the labor and furnish the materials for which he now claims pay, it must be some obstinate principle of sheer law, wholly untinctured with equity, that would debar him from a just compensation for the materials furnished and labor performed. The assent of the owner of the land to all that was done may be presumed, and the inhabitants of the school district be in the unmolested enjoyment and occupancy of the house so long as he will permit it to remain; or if he should object, they may lawfully remove it. At this inconvenience they have no cause for complaint. It was their business to secure the title to the site before they erected the building, and having failed to do so, on them must fall the loss, if perchance loss may happen.

It is urged that debt will not lie, except upon the written contract; and as the defendants have succeeded in avoiding that, they now contend that this form of action cannot be sustained. It is undoubtedly true, that since *indebitatus assumpsit* has come into use, the action of debt is rarely resorted to in cases on simple contract. But until *Slade's case*, 4 *Co.* 91, on all simple contracts for money demands, actions of debt were in general use, and it was not without a contest between the courts in *Westminster Hall*, that assumpsit was ever permitted in such cases. By the ancient common law all matters of personal contract were

considered as binding only in the light of debts, and the only means of recovery in a court was by an action of debt. 1 *Reeves' Hist.* 159. It was said by the court in *Walker v. Witter,* 1 *Doug.* 1, that " wherever *indebitatus assumpsit* is maintainable, debt also is." *Chitty* says, debt is a more extensive remedy for the recovery of money than assumpsit; that it lies to recover money due on legal liabilities, or upon simple contracts express or implied, whether verbal or written, or on a *quantum meruit* for work, or for goods sold. 1 *Chitt. Pl.* 101, 102. " Debt lies if the sum be not certain, if it may be ascertained, as to pay a tailor *quantum meruit* for making garments and finding necessaries for them." *Com. Dig. Debt, A,* 8. So it lies though there be only an implied contract. *Ibid, Debt, A,* 9. And it is now settled, that the plaintiff in an action of debt, may prove and recover less than the sum demanded in the writ. 2 *Bl. Rep.* 1221. *Mc-Quillin* v. *Cox,* 1 *H. Bl.* 249 ; 2 *Bl. Com.* by *Chitty,* 155, *note.* In *Massachusetts* it has been decided that debt lies on a simple contract as well as on a specialty, and even on a *quantum meruit* and *quantum valebant. Smith* v. *The Proprietors of the first Congregational Meeting-house in Lowell,* 8 *Pick.* 178.

It is contended that the action was prematurely brought, that notice and demand were necessary before the plaintiff was legally entitled to payment. It is to be kept in mind, that the defendants resist the validity of the special contract, on the ground that they never assented nor were they parties to it, and they have thus succeeded in avoiding it. They are not, therefore, to call it in aid for any purpose. The plaintiff has performed certain beneficial services, and furnished sundry materials for the erection and finishing a school-house for the defendants, having been employed so to do by their agents. The law thereupon implies a contract by which they became indebted to the amount of these services, and the plaintiff is no more required to give notice, or demand payment of the debt, than he would be of a note of hand.

The defendants have filed a motion in arrest of judgment, alleging that in the declaration are joined counts in debt and in assumpsit. In the case before referred to, of *Smith* v. *The Proprietors of the First Congregational Meeting-house in Lowell,* the court decided that counts on a special contract under seal, and

a *quantum meruit* for labor done and materials found, may be joined in an action of debt. Perhaps, in the case at bar, the second, third, and fourth counts are not in the most approved form as counts in debt; but we think them sufficient to support the verdict, and that judgment may be properly rendered thereon. A declaration would be sufficient if it contained an allegation that the defendant is indebted to the plaintiff for certain work and labor done and performed, without alleging any express contract, for the law will imply the contract. In *Emery* v. *Fell*, 2 *T. R.* 28, which was debt for goods sold and delivered, the first count in the declaration stated that the defendant was indebted to the plaintiff in the sum of £2, 12s. 6d. for divers goods, wares and merchandize, by the plaintiff before that time sold and delivered to the defendant at his special instance and request. There were other counts for work and labor, money paid, laid out, and expended, and money had and received, in the same form on special demurrer the declaration was held sufficient. In *The Union Cotton Manufactory* v. *Lobdell*, 13 *Johns.* 462, which was an action of debt, the declaration contained several counts: 1st, on a judgment—2nd, counts for goods sold, money lent, and advanced; paid, laid out, and expended; and had and received. The defendant demurred to the declaration. The court say, the rule is invariable, that causes of action which admit of the same plea and the same judgment may be joined; but the converse of this proposition is not invariably true. Debt on specialty or debt on judgment may be joined with debt on simple contract, although they require different pleas.

In the case under consideration, the plaintiff alleges that the defendants, being indebted, promised to pay. This is setting forth a contract, upon which the law says either *debt* or *assumpsit* will lie. If the indebtedness only had been alleged, it would have been sufficient in an action of debt. Is it so insufficient as to be the ground of arresting the judgment, because of the allegation that the indebtedness was admitted by an express promise? If the indebtedness had been directly alleged, the declaration would be good on special demurrer. As it is, we think it not so defective as to require us to sustain this motion. The Court will not arrest a judgment, unless it be perfectly clear that the plaintiff is not entitled to retain it.