AUGUSTUS S. BURKE

*vs.*

FRANK LANGLOIS

FRANK LANGLOIS

*vs.*

AUGUSTUS S. BURKE

Somerset.    Opinion January 5, 1928.

*Where the results depend upon conflicting testimony, the credibility of witnesses is distinctly a question for the jury who see and hear the witnesses.*

*The fact that the Appellate Court from the printed record might have arrived at a different conclusion than the jury did is not sufficient ground for overturning their verdict. It must appear to be clearly wrong due to some mistake, bias, or prejudice.*

In the case at bar, this Court can not say that the jury clearly did not make due allowance for the claims of the owner of the building as to bad workmanship in its special findings for allowances for completing the building in the action brought by the contractor.

On general motions. Two actions tried together, the first to recover for work performed and materials furnished under a written contract between the parties; the second to recover damages for failure to perform the conditions of the contract.

A verdict for plaintiff was rendered in the first action and defendant filed a general motion for a new trial. A verdict was rendered for plaintiff in the second action who filed a general motion. Motion in each case overruled.

The cases fully appear in the opinion.

*H. E. Weeks and Merrill & Merrill,* for Augustus S. Burke.

*F. Harold Dubord and N. A. Marcou,* for Frank Langlois.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, JJ.

WILSON, C. J.    In the late fall of 1924, Augustus Burke, the plaintiff in the first action, entered into a contract with the defendant, Langlois, to repair or remodel a building belonging to Langlois.    The contract provided for the raising of the building two feet, building a concrete foundation wall, laying a cement floor in the basement, putting in windows, doors and shelving, doing all the digging and grading, painting the new woodwork and building a chimney from the basement to the top, and also finishing off a tenement in the upper part of the building.    It is not necessary for the purpose of this case to further specify the details of the contract.

The work on the building was not begun until about the first of November, 1924, for the reason, as Burke testified, which was not denied by Langlois, that Langlois was using the building for a store and roadside stand for tourists and did not wish his business interfered with until after the tourist traffic was over.

When the excavation was completed for the basement and the forms for the foundation walls were constructed, cold weather came on.    The day on which they were prepared to run the concrete was cold, and Burke claimed that he notified Langlois it was too cold to run concrete without danger of freezing and eventually peeling.    Burke further testified, and was corroborated by several witnesses, that Langlois told him to go ahead and run it.    Burke also testified that before the contract was entered into he told Langlois that if he delayed doing the work until late fall, he might encounter just such conditions.

Freezing and thawing weather followed the running of the concrete into the forms, and although the forms were permitted to remain for a longer time than is customary to allow the cement to set, in course of time the walls both peeled and cracked.    What caused the latter condition is not clear from the evidence, whether it was caused by the heaving of the ground due to freezing, the walls being built on clay soil and surface water flowing against the walls, or by poor material used as claimed by Langlois.    The jury may have found it was due to leaving the building without heat the following winter and without proper drainage for which Burke was in no way

responsible, as the repair or building of a drain was no part of his contract.

It was conceded by Burke that the work contemplated by the contract was not completed; but that as to certain parts, namely, the completion of the basement floor, certain painting and the grading he purposely left it to be finished in the spring after the weather was warmer, as it was not advisable, and as to the grading, was impossible to complete it during the winter, and when he returned in the spring to finish it was refused admission to the premises for that purpose by Langlois.

Whereupon Burke brought his action to recover on his contract and for certain extra labor and materials furnished by him; and Langlois brought a cross action to recover for failure to complete and damages due to improper workmanship.

The cases were tried together and four questions were submitted to the jury for special findings from which a general verdict was made up; and found by the jury, of $1491.13 for Burke and $10.30 for Langlois in his cross action. From these verdicts Langlois filed a motion for a new trial in each action.

The principal ground relied upon by Langlois as warranting the setting aside of the verdicts relates to the construction of the foundation walls, although in addition thereto he contends the basement floor was improperly laid and left unfinished, that the grading and painting was incompleted, certain posts supporting the building were improperly set, and certain carpenter work improperly done and in his action claimed damages to an amount far in excess of the price originally agreed upon for doing the work.

There is no dispute between the parties as to any question of law involved. The cases appear to hinge almost entirely on the credibility of witnesses and the weight to be given to their testimony, which are, of course, distinctly jury questions.

Upon the question of the basement floor, the grading and painting, Burke admitted in the course of the trial that they were not completed and consented to having a sum sufficient to complete them deducted from his contract price, which the jury passed on as well as question of the improper setting of the posts. They were peculiarly jury questions. We can not disturb the verdicts by reason of the findings on these questions.

Neither do we think the evidence warrants a setting aside of Langlois' verdict for damages for defective workmanship or loss of goods due thereto, apart from the questions arising in connection with the foundation walls. It is quite evident that a system of drainage was necessary to carry off the water in the soil about the building and the surface water that naturally flowed down against this wall, and for this Burke was not responsible, and was under no obligation to provide against it. The jury evidently were not impressed by Langlois' claim for injury to his goods from water which may well have seemed to the jury exorbitant, and so far as any neglect of Burke was concerned, unfounded.

The chief contention arose over the construction of the foundation walls. That they peeled and cracked, Burke admitted. The photographs introduced in evidence disclosed it. It should be noted, however, that the photographs were taken just before the trial, nearly two years after the walls were built and after Langlois had had some patching done where the wall peeled, and following the winter he left the building without heat for five months and the underdrain froze up and failed to carry off the water.

Burke's insistence was that the cause of the peeling and cracking of the wall was due to Langlois' insisting that the concrete wall be run on a cold day in November against Burke's advice and judgment, and thereby Langlois assumed the liability of the effects of the weather, from which, together with the lack of suitable drainage, all the trouble with the wall arose. Langlois denied this, but Burke was corroborated by several witnesses and the jury may have believed them instead of Langlois.

Langlois, however, goes further and contends that evidence produced by him and the admission of one of Burke's witnesses, who built the wall, shows that poor gravel was used and this was responsible for the trouble, together with a failure to use steam or hot water while the cement was being prepared and run.

While the testimony of the witness who built the wall in a measure supports Langlois' contention as to the quality of the gravel and the practice of using steam or hot water in preparing the concrete in cold weather, the testimony of other witnesses, even of the men employed by Langlois to finish the mason work and patch the walls, was that the gravel was of good average quality and that the core of the wall

was strong and solid and when they had finished their work of patching it was a good substantial wall.

Burke, however, during the trial appears to have assented to the proposition that he was bound to resurface the wall and gave an estimate of the cost of resurfacing where it had peeled and of filling the cracks.    Instead of the expense being included in Langlois' verdict for damages for poor workmanship, however, it was included in the questions submitted as to the expense of completing the contract. Burke estimated that the cost of properly resurfacing the foundations and remedying the damage done by the frost would be $38.50, and that the cost of completing the basement floor, the grading and painting was $70.30, which with the expense of restoring the walls totaled $108.80.    The jury was asked to specially find what was due Langlois for completing the work in addition to the sum of $108.80 admitted by Burke.    Their answer was $31.90.

It is impossible to tell from the record whether the additional sum was for restoring the wall alone or for other items which Langlois claimed was not completed; but from the evidence in the case, it can not be said some part or all of it was not for additional expense for resurfacing the walls.

Langlois claimed that the wall was wholly worthless and would have to be replaced; but his only witness to that effect was one who admitted that he had stated during the course of the trial that he proposed to get even in this case with the mason who built the wall, while Burke's witnesses, including the mason and tender who worked on the wall for Langlois, stated that the core appeared to be perfectly solid and only required resurfacing to make a perfectly good wall.

The jury was clearly warranted in rejecting Langlois' claim as to the entirely worthless condition of the wall, and we can not say they were not clearly warranted in finding that a good concrete wall could have been had by the additional expenditure of not exceeding sixty-eight dollars, which the deduction by the jury from Burke's contract price may have allowed for this purpose.

The jury heard the witnesses, saw the photographs and passed on the specific questions presented to them.    While this Court might have arrived at different conclusions, if it could have heard and seen the witnesses, but from the record it can not say that the final results arrived at were clearly wrong and that Langlois was aggrieved.

*Motion in each case overruled.*