ROCKLAND POULTRY CO.
*vs.*
THOMAS M. ANDERSON

Knox.   Opinion, October 10, 1952

*Christopher S. Roberts*, for plaintiff.

*Frank F. Harding*, for defendant.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.  MURCHIE, C. J., did not sit.

FELLOWS, J.   This action on the case for alleged breach of the terms of a building contract comes to the Law Court, after verdict for defendant, on plaintiff's general motion for a new trial.

It is alleged, and the contract provided, that "the said Thomas M. Anderson on his part, agrees to construct and

complete for the said Rockland Poultry Company on its lot, Tillson Avenue, Rockland, Maine, an addition to the present building on said lot, said addition to be 62 ft. x 72 ft., taking in additional corner 8 ft. x 22 ft. between the old and new building, two overhead doors 10 ft. x 8 ft., ample and sufficient foundations, drainage systems for poultry business, gutters on floors and sufficient windows for ample and sufficient light. Said Thomas M. Anderson to furnish all material and labor and to complete and make for said Poultry Company a good, strong substantial building of first class material for the sum of $11,476.00. Work to be completed as soon as possible, but not exceeding ten weeks from May 22, 1950."

The plaintiff contends that defendant did not perform his contract as promised and brought this action to recover damages. The declaration alleges as follows: "and the plaintiff avers that the defendant built said building and that the plaintiff in all respects has fulfilled all of said agreement on its part to be performed and paid to said defendant as agreed the sum of eleven thousand four hundred and seventy-six dollars for said work, materials, etc., yet, said defendant did not build said building as promised, in that said. building did not have ample and sufficient foundations, but that said foundation was weak and faulty and has since sagged and settled, whereby the floors are cracked, the walls settled and the roof, by reason thereof, warped and bent so that water does not drain from it in a proper manner and that said building was not the strong substantial building that defendant agreed and contracted to erect and build as aforesaid, to the great loss of said plaintiff." The second count in the declaration relating to another building built by defendant was dismissed before trial by agreement.

The case was submitted to the jury and the verdict was for the defendant.

The record shows that the principal facts are that the defendant, Thomas M. Anderson, entered into a written contract with the plaintiff, Rockland Poultry Company, for the construction of a building "good, strong and substantial" with "ample and sufficient foundations." The defendant constructed the building and received his pay in full. The building was used by the Poultry Company for the storage of metal cages containing live chickens. The plaintiff claimed that a section of floor became and was badly cracked and settled below the remainder of the floor. There were other claims made by the plaintiff which were apparently not vigorously pressed or were waived at the trial, including the claim under the second count for another building, which count the docket shows was dismissed. The plaintiff also claimed that in addition to the cracking or settling of the floor, that the foundations "sagged and settled," that "the walls settled and the roof by reason thereof, warped and bent so that water does not drain from it in a proper manner and that said building was not the strong substantial building that defendant agreed and contracted to erect and build." The evidence conflicts in regard to the settling of walls, the alleged improper construction so that water remained improperly on the roof due to warping, and the alleged "sagging" foundations; but the defendant Thomas M. Anderson recognizes and admits the question of the cracking or settling of the floor. His testimony was as follows:

"Q. So you want to leave this thought with the jury: that from your examination Mr. Poust has a strong, substantial floor fit for what it was constructed for? I mean right at the present time.

A. At the present time in that corner, no, it is not, but it is not my fault. There is nothing I could do to help it. It was made land, filled in with all kinds of stuff, which I had no way

—the only way would have been to dig out the whole inside of that fill, that made land, and replace it with other fill.

Q. You signed a contract, didn't you, Mr. Anderson?

A. I did.

Q. You examined the premises?

A. Yes.

Q. You knew what the land was?

A. I could see on the surface. I had not dug into there.

Q. And the important part of a building is the foundation? Isn't that right?

A. Yes.

Q. Now I ask you this: If you had had a proper fill and a proper installation of that floor, would it have settled?

A. On top of that made land, yes, it would have settled.

Q. Did you know it was made land when you put this fill and cement on top of it?

A. Yes, when we begun to dig.

Q. Did you know it was filled land?

A. Poust knew it.

Q. Did you know it?

A. I saw it when we begun to dig, yes, I did know it was a mud hole there years ago and that had been filled in.

Q. Did you examine the premises before you started any construction?

A. Yes."

The defendant also testified in answer to a question as follows:

"Q. Now with respect to this southeast corner of the building in which one corner of the floor has settled, did you have some discussion with Mr. Shane about that?

A. Yes, they took me in there and showed it to me and I told them what I would do; I would take up two sections and fix it and hammer and plane the other off with an Air-hammer, but they wouldn't accept it."

The defendant's expert witness estimated the cost to repair the settling and cracks in the floor and corners to make them "strong and substantial" according to contract would be from $275.00 to $350.00.

The defendant claims that the evidence was conflicting and that the case presented solely a jury question, citing many Maine decisions such as *Fournier* v. *Gagne,* 117 Me. 561; *Clark* v. *Dillingham,* 116 Me. 508; *Burke* v. *Langlois,* 126 Me. 498, holding that only where the verdict is manifestly wrong should a new trial be granted.

The plaintiff, however, claims that the verdict for the defendant is manifestly wrong because the admitted facts entitle the plaintiff to some damages even if those damages are comparatively small.

A careful examination of the record convinces the court that this claim of the plaintiff is correct. The jury verdict for the defendant is plainly wrong. The damages may not be large, as the plaintiff states in its brief, but the plaintiff is entitled to something for improper construction of the floor under the terms of the contract, which is proved by the admissions of the defendant, to the effect that the floor is not the good and substantial one he promised. There is no conflicting evidence on that point, for the defendant ad-

mits liability in an amount sufficient to make the floor "good, strong and substantial" as the contract required. The contract provided for a good building with "ample and sufficient foundations," and the evidence does not show that to build such a floor was impossible. The defendant's expert witness stated that to build in that building a good floor "you would have to excavate four or five feet." It might be difficult but it was not impossible. It might cost the contractor more than he expected, but he was bound by his contract.

Where a construction contract provides that a certain thing be done in a certain manner, or to obtain a certain result, it must be done by the contracting party if it is not impossible, and if it is not prevented by act of God or of the other party. There must be "substantial performance." *Poland* v. *Brick Company*, 100 Me. 133; *Hill* v. *School District*, 17 Me. 316; *Dickey* v. *Linscott*, 20 Me. 453; *Hattin* v. *Chase*, 88 Me. 237; 17 C. J. S., "Contracts," 1106, 1109, and cases there cited. 12 Am. Jur. "Contracts," 928, Section 362, and cases there cited. *White* v. *Oliver*, 36 Me. 92; *Skowhegan Water Co.* v. *Skowhegan Village Corp.*, 102 Me. 323.

Where a contractor departs from his contract but there is a benefit to the other party and the other accepts, or uses, the subject matter of the contract, the contractor is entitled to receive a fair and reasonable value for services, not exceeding the contract price. The other party may be entitled to damages for failure to perform according to contract. *Skowhegan Water Co.* v. *Skowhegan Village Corp.*, 102 Me. 323, 328; *Veazie* v. *Bangor*, 51 Me. 509.

During the trial, the jury learned from the testimony of the defendant Thomas M. Anderson that he constructed this building for the plaintiff Poultry Company and was paid in full therefor. He also constructed for the Poultry Company

a second building and was paid for that building also. Still later, he made alterations and repairs on a third building for which he was not paid. Anderson, therefore, brought suit against the Poultry Company for these alterations, which action was defaulted without contest by the Poultry Company preceding the trial of this case now under consideration. This pending cross-action by the Poultry Company against Anderson was brought after the suit by Anderson against the Poultry Company. This knowledge on the part of the jury, undoubtedly caused bias or prejudice in favor of the defendant and against the plaintiff. The verdict shows it. The jury disregarded or did not consider the admission of liability testified to by the defendant, and the damages estimated by his own experts.

The economic happiness of any State depends largely on the inviolability of contracts made by its people. It is the duty of the courts to enforce, whenever necessary, the provisions of legal and binding promises.

Here, the defendant admits a liability under his contract which the jury disregarded. The verdict for the defendant was clearly wrong. The entry must, therefore, be

*Motion sustained.*

*New trial granted.*