290 F.2d 577
 NARRAGANSETT IMPROVEMENT COMPANY, Defendant, Appellant,
v.
UNITED STATES of America, for the Use and Benefit of Anthony
MELLO, d/b/a Maple Grove Nurseries, Plaintiff, Appellee.
MARYLAND CASUALTY COMPANY, Defendant, Appellant,
v.
UNITED STATES of America, for the Use and Benefit of Anthony
MELLO, d/b/a Maple Grove Nurseries, Plaintiff, Appellee.
 Nos. 5782, 5783.
 United States Court of Appeals First Circuit.
 May 19, 1961.
 
 John E. Graham, III, and Donald P. Ryan, Providence, R.I., with whom G. Chandler Beals, Providence, R.I., on brief, for appellants.
 Ronald Lagueux, Providence, R.I., with whom Stephen A. Fanning, Jr., and Edwards & Angell, Providence, R.I., on brief, for appellee.
 Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit judges.
 HARTIGAN, Circuit Judge.
 
 
 1
 These are appeals from a judgment of the United States District Court for the District of Rhode Island which was entered in favor of the use-plaintiff both on his claim under the Miller Act, 40 U.S.C.A. 270a-270d and on the defendants' counterclaim.
 
 
 2
 Defendant-appellant, Narragansett Improvement Company, (hereinafter called Narragansett) was the general contractor engaged by the United States to construct sewerage disposal facilities, among other things, for use in connection with a Nike site in Foster, Rhode Island. Narragansett as principal executed a standard Government Form of payment bond to the United States on which Maryland Casualty Company, the other defendant-appellant, was surety.
 
 
 3
 The use-plaintiff, Anthony Mello, doing business as Maple Grove Nurseries, contracted with Narragansett to do certain of the landscaping work in connection with the sewerage disposal site. The use-plaintiff furnished labor and materials in performance of work called for by the contract. This action was brought under the Miller Act to obtain compensation for the work performed and the materials supplied. The complaint alleged that the work under the contract was fully performed except for a minor part which was not performed by Mello due to acts of Narragansett.
 
 
 4
 The defendant answered the complaint and also counterclaimed for costs allegedly incurred in completing work left undone by Mello when he allegedly abandoned work on the project and in correcting work performed by Mello which was not satisfactory.
 
 
 5
 The district judge sitting without a jury found that Narragansett and Mello made an agreement on October 15, 1958 under which Mello was to (1) construct a rock culvert adjoining the road into the sewerage disposal site; (2) to grade and seed the shoulders of the road; (3) to grade and seed the pipe line; (4) to dig and construct an outfall ditch from the filter beds of the unit to a swampy area close by; and (5) to grade the area immediately adjacent to the filter beds, put on loam and seed this area. The trial judge found that the filter beds were to be completed and filter sand put in them by Narragansett, which was also to furnish gravel, rock, and loam to Mello.
 
 
 6
 He also found that on the following day Narragansett issued to Mello a purchase order which purported to encompass the agreement reached on October 15. The order dated October 16, 1958 read: 'Site work and landscape work at Foster Sewage Plant, $4,640.00. Includes finishing job as of Oct. 15, 1958 with exception of pipe & building work to be done by M. G. Allen Ass. and filter sand. N.I.Co. to furnish gravel and dumped rock delivered and loam in pile at pit . . . Completed by 10/31/58.'
 
 
 7
 The trial judge also found that it was the duty of Narragansett to have the site in satisfactory condition for the performance of work by Mello; that the work of landscaping around the filter beds could not be done by Mello until the requisite filter sand had been placed in the filter beds and gravel brought to the site; that during the 16 day period contemplated by the agreement for completion of the work, Narragansett had not made the site adjacent to the filter beds ready for any work by Mello; and that approved sand for the filter beds was not procured by Narragansett until late in January of 1959.
 
 
 8
 The trial judge further found that (1) in late March, 1959 Narragansett was still bringing in approved sand to be put in the filter beds; (2) the first of the gravel required before the grading and seeding work around the filter beds could be done by Mello was not on the premises until March 25, 1959 and (3) the gravel was still being delivered on April 3, 1959, Mello's last day of work on the project.
 
 
 9
 In rejecting Narragansett's contention that it was justified in terminating the contract with Mello because of delays on the part of Mello in completion of his tasks under the contract,[1] the trial judge made the following findings. The Army Corps of Engineers sent a telegram dated April 3, 1959 to Narragansett complaining about the delay in the completion of the project. Narragansett then suddenly insisted upon a deadline of April 20 for completion of Mello's work. Mello by phone on April 4 objected to a demand that he put on extra help and work overtime to meet this deadline unless Narragansett would pay the added labor costs. The judge concluded that Mello was warranted in his position in view of Narragansett's failure to make the site available for work by Mello during the five months prior thereto.
 
 
 10
 The trial judge held that Narragansett wrongfully terminated the contract; that Mello was warranted in refusing to proceed further with the work called for by the contract; and that Mello was entitled to recover the reasonable value of the services performed and the materials furnished by him prior to Narragansett's wrongful termination of the contract. He found the reasonable value of the services rendered and materials furnished by Mello to be $3,650. He also held that the defendants were not entitled to recover on their counterclaim.[2]
 
 
 11
 Defendants contend that the district court erred prejudicially (1) by finding for the use-plaintiff when he had failed to allege and prove that the work performed by him was performed in a workmanlike manner; (2) by placing the burden of proof on this issue on defendants; (3) in interpreting the purchase order of October 16; (4) in making various findings; (5) in considering and computing the reasonable value of the services and materials furnished by the use-plaintiff; (6) in permitting the recall of the use-plaintiff to the stand.
 
 
 12
 Defendants rely principally on Baerveldt & Honig Const. Co. v. Szombathy, 1956, 365 Mo. 845, 289 S.W.2d 116 for the proposition that in a suit for the reasonable value of services performed and materials furnished, the plaintiff must allege and prove that the work was done in a skillful and workmanlike manner as a condition precedent to recovery. But in Baerveldt, the plaintiff's case went to the jury on the theory of recovery on the contract, and the holding of the court does not support defendants' contention.
 
 
 13
 We believe that the correct view on the requirement of alleging and proving the quality of the work in a quantum meruit case is that stated in Beverly Hospital v. Early, 1935, 292 Mass. 201, 197 N.E. 641, 100 A.L.R. 1332. According to that case the question of the quality of work is incorporated in the general issue of the value of the services performed. We conclude, therefore, that defendants' first two contentions are without merit.[3]
 
 
 14
 We believe also that there is no merit in defendants' contention that the district court should not have considered the reasonable value of the services because the complaint set forth only a claim for breach of the contract. The complaint is not overly clear in regard to the theory of recovery, but the district court's conclusion that, under the circumstances alleged in the complaint, the use-plaintiff is entitled to recover on the basis of the reasonable value of his services is correct. See St. Paul-Mercury Indemnity Company v. United States, 10 Cir., 1956, 238 F.2d 917. We do not think that the district court's interpretation of the instant claim as encompassing recovery of the reasonable value of the use-plaintiff's services is erroneous. If defendants were prejudiced in the presentation of their defense because of their impression that the action was solely for breach of the contract, they should have requested appropriate relief from the trial court. Having failed to do that, the defendants are in no position to complain now.
 
 
 15
 One of the most pivotal fact determinations in resolving the issue of whether Mello's delay was justified or not was the court's finding that Narragansett had the obligation under the contract to build the berms of the filter beds.[4] This fact determination was also essential to the court's conclusion that Mello's conduct and position on April 4, 1959 was justified and that the contract was wrongfully terminated by Narragansett.
 
 
 16
 The finding that Narragansett had the duty of building the berms is infected, in our opinion, by the district court's misunderstanding of the undisputed import of a phrase in the October 16, 1958 purchase order. The pertinent part of the purchase order states:
 
 
 17
 'Article
 
 
 18
 'Site work and landscape work at Foster Sewage Plant. $4640.00 Includes finishing job as of Oct. 15, 1958 with the exception of pipe & building work to be done by M. G. Allen Ass. and filter sand.'
 
 
 19
 During the trial the district court raised the question of the meaning of the phrase 'as of October 15.' The parties were in agreement that the phrase meant 'to take the site as it exists on October 15th and finish it.' In its opinion the court stated: 'The pertinent part of this purchase order is as follows: 'Site work and landscape work at Foster sewage plant, $4,640.00. Includes finishing job as of October 15, 1958.' This is obviously an error; it should have been October 31, 1958.'
 
 
 20
 This statement indicates to us that the court interpreted the phrase 'finishing job as of * * *' to have significance only on the question of the contracted date of completion. This phrase was not viewed by the court as meaning acceptance of the site in the condition existing on October 15, and was not, therefore, considered by the court in deciding which party had the duty of building the berms. In view of the parties' agreement as to the meaning of the phrase in the purchase order, and the evident weight the district court gave to the purchase order as at least a confirmation of the agreement between Mello and Narragansett, we believe that the phrase as interpreted by the parties should have been considered on this issue. Defendants, in our opinion, were prejudiced by the court's misapprehension of the effect of this phrase in the purchase order and the court's resolution of the question of who should build the berms without considering the phrase in its proper effect.
 
 
 21
 We believe that this finding must be set aside under Rule 52(a), F.R.Civ.P., 28 U.S.C.A., because of the district court's misapprehension of the effect of this undisputed evidence. See Homelite v. Trywilk Realty Company, 4 Cir., 1959, 272 F.2d 688; Manufacturers Cas. Ins. Co. v. Intrusion-Prepakt, Inc., 5 Cir., 1959, 264 F.2d 758; Western Cottonoil Company v. Hodges, 5 Cir., 1954, 218 F.2d 158; Bradshaw v. Superior Oil Co., 10 Cir., 1947, 164 F.2d 165. These cases all indicate that one aspect of the clearly erroneous standard under Rule 52(a) is whether 'the court misapprehended the effect of the evidence,' Manufacturers Cas. Inc. Co. v. Intrusion-Prepakt, Inc., supra, 264 F.2d at page 760 or 'a serious mistake has been made in a consideration of the evidence * * *.' Bradshaw v. Superior Oil Co., supra, 164 F.2d at page 167.
 
 
 22
 The district court indicated that it was impressed by the testimony of Mello in many respects. In view of this fact, we believe that we should not attempt to determine the factual question of who, under the agreement, had the duty of building the berms; the resolution of this question depends upon weighing the effect of the phrase in the purchase order and the conflicting testimony of Mello and Narragansett's employee, Everson. The district court should make this determination.
 
 
 23
 Judgment will be entered vacating the judgment of the district court and remanding the case for a new trial.
 
 
 
 [1]
 Defendants' counsel at the trial stated that their contention was that the reason for terminating the contract was that Mello wasn't getting the work done, and any reference to quality of work was in regard to the counterclaim only, i.e., that money had been spent by defendants to correct defects
 
 
 [2]
 In regard to complaint of unsatisfactory work by Mello, the trial judge classed them as mere afterthoughts upon which Narragansett sought to justify its termination of Mello's contract and observed that there was no testimony by a representative of the Army that Mello's work was done in an unsatisfactory manner. He rejected each of the principal claims of unsatisfactory work
 
 
 [3]
 We believe that defendants' contention that Mello's recall as a witness was prejudicial is entirely without substance since the evidence offered on his recall was relevant to defendants' counterclaim and rebutted defendants' witnesses testimony regarding the extent of work left undone by Mello
 
 
 [4]
 If Mello had the duty of building the berms, then he could have been working on this phase of the job and neither the sand nor the gravel would have been needed until the berms was almost completed