UNITED STATES of America for the Use and Benefit of ARLMONT AIR CONDITION CORPORATION, Plaintiff,

v.

PREMIER CONTRACTORS, INC., and Agricultural Insurance Company, Defendants.

AGRICULTURAL INSURANCE COMPANY, Defendant and Cross-Claim Plaintiff,

v.

PREMIER CONTRACTORS, INC., Duncan Contracting Co., Inc., John F. Kane, Hugh R. McAfee and J. F. Kane Contracting Co., Inc., a/k/a John F. Kane Co., Inc., Cross-Claim Defendants.

Civ. No. 1597.

United States District Court
D. Maine, N. D.
March 25, 1968.

Gerald E. Rudman, Gene Carter, Bangor, Me., Jacob J. Locke, Max S. Ficksman, Boston, Mass., for plaintiffs.

Charles P. Barnes, II, Portland, Me., Solomon Romanow, Boston, Mass., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DIRECTION FOR ENTRY OF JUDGMENT

GIGNOUX, District Judge.

This is an action under the Miller Act, 40 U.S.C. § 270b (1964), to recover money claimed to be due the use-plaintiff, Arlmont Air Condition Corporation, for labor and materials furnished by Arlmont under subcontract with the defendant Premier Contractors, Inc. in connection with the construction by Premier of a United States Border Station at Van Buren, Maine for the General Services Administration, United States Government. The defendant Agricultural Insurance Company is the surety on the payment bond furnished by Premier as required by the Miller Act, 40 U.S.C. § 270a (1964). Agricultural's answer includes a counterclaim asserting the right to set-off against any recovery by Arlmont, the expenses incurred by Agricultural in completing the work required by the subcontract and in paying Arlmont's suppliers.[1] Agricultural has also asserted in its answer a cross-claim for indemnity against Premier and against

---

[1] Agricultural's counterclaim also sought to set-off similar expenses alleged to have been incurred by it as surety on Miller Act bonds furnished by it in connection with various other Government projects on which Arlmont was a subcontractor. This portion of the counterclaim was dismissed by the Court, after hearing, on June 1, 1967.

Duncan Contracting Co., Inc., John F. Kane, Hugh R. McAfee and J. F. Kane Contracting Co., Inc.

No appearance or answer having been filed on behalf of Premier or the cross-claim defendants, their default was entered by the Court on January 12 and February 15, 1967, Fed.R.Civ.P. 55(a),[2] and the action has been tried solely on Arlmont's claim against Agricultural as surety on the Miller Act bond.[3]

The dispute between the parties concerns the amount due Arlmont for labor and materials furnished under its subcontract prior to the termination of the subcontract by Premier. Arlmont contends that the subcontract was terminated by Premier without cause and that it is entitled to recover under the subcontract the full contract price plus the fair and reasonable value of an extra allegedly performed by it, less the payments received by it and the expense incurred by Premier and Agricultural in completing the work unfinished by Arlmont because of the termination. Alternatively, Arlmont claims that it is entitled to recover in *quantum meruit* the fair value of the labor and materials furnished by it pursuant to the subcontract. Agricultural maintains that the subcontract was terminated by Premier because of Arlmont's breach in failing to pay its suppliers as required by the terms of the subcontract; that Arlmont did not completely or substantially perform its subcontract; and that Arlmont is entitled to no recovery either under its subcontract or in *quantum meruit*.

At pre-trial conferences held at Bangor on October 4, 1966 and at Portland on June 1 and December 28, 1967, and at trial had before the Court, without jury, at Portland on March 6 and 7, 1968, the parties stipulated as to various matters relevant to the action and presented oral and documentary evidence as to those matters on which they could not agree. Having considered the stipulations and evidence thus presented by the parties and the written and oral arguments of counsel, the Court now makes its findings of fact and conclusions of law and directs entry of its judgment as follows:

## FINDINGS OF FACT

The Court's findings of fact are:

■ 1. On or about August 6, 1964 the United States of America, General Services Administration, entered into Contract #GS–01B–0185 with the defendant Premier Contractors, Inc. for the construction of a United States Border Station at Van Buren, Maine. A copy of this contract is attached to the complaint as Exhibit "A". A copy of the specifications of the contract is in evidence as plaintiff's Exhibit No. 2.

2. On or about August 6, 1964 and in connection with the aforesaid contract, Premier, as principal, and the defendant Agricultural Insurance Company, as surety, executed and delivered a payment bond guaranteeing payment to all persons supplying labor and material in the prosecution of the work provided for in said contract and any and all duly authorized modifications thereof. A copy of this payment bond is attached to the complaint as Exhibit "B".

3. Following the execution of the aforesaid contract, Premier entered into a subcontract dated September 9, 1964 with the use-plaintiff, Arlmont Air Condition Corporation, under the terms of which Arlmont agreed to furnish certain materials and to perform certain labor involving the installation of plumbing, heating and snow melting equipment and certain other mechanical work covered by Contract #GS–01B–0185, and Premier agreed to pay Arlmont the sum of $23,500 therefor. A copy of this subcontract is in evidence as plaintiff's Exhibit No. 1.

---

2. As of this date no request for entry of default judgment against Premier or the cross-claim defendants has been made. Fed.R.Civ.P. 55(b).

3. Those portions of Agricultural's counterclaim in which it seeks to set-off expenses incurred by it on the instant project have been mooted by the present disposition of this case.

4. Commencing on about September 9, 1964 and continuing until on or about May 11, 1965 Arlmont furnished labor and materials under its subcontract having a total fair and reasonable value of $14,719.05, as follows:[4]

| Plaintiff's Exhibit Nos. | | | |
|---|---|---|---|
| 17, 18 | Labor furnished by Arlmont | | $ 2,651.75 |
| | Materials and labor furnished by suppliers | | 12,067.30 |
| | Supplier | Amount | |
| 4 | The Powers Regulator Co. Skokie, Illinois | $ 1,554.76 | |
| 6 | Vent-Fab, Inc. Malden, Massachusetts | 1,400.00 | |
| 7 | The John Bonner Co. Cambridge, Massachusetts | 1,041.32 | |
| 8 | Gagnon's Van Buren, Maine | 257.21 | |
| 9 | The Trane Company La Crosse, Wisconsin | 1,550.00 | |
| 10 | Romeo J. Roy, Inc. Upper Frenchville, Maine | 3,281.87 | |
| 11 | Riverside Pipe and Supply Co. Medford, Massachusetts | 1,267.77 | |
| 12 | Weymouth Engineering Co. East Weymouth, Massachusetts | 513.00 | |
| 13 | Richard Belyea Caribou, Maine | 108.00 | |
| 14 | Arlington Pipe and Supply Co. Arlington, Massachusetts | 818.27 | |
| 15 | O. J. Holt Co., Inc. Cambridge, Massachusetts | 275.10 | |
| | | $12,067.30 | |
| | | Total | $14,719.05 |

---

4. Arlmont's president, Bernard Piscopo, also testified that Arlmont had performed an authorized "extra" involving the laying of additional pipe for drainage of the building site perimeter. He estimated that the pipe and labor had a fair and reasonable value of $1,300. However, he was unable to testify with any degree of specificity as to what work was actually done in connection with this extra, or what was the actual value of the materials and labor furnished by Arlmont. During the course of his testimony, he stated values ranging from $1,100 to $1,600. Furthermore, throughout exhaustive and protracted pre-trial discovery proceedings, Mr. Piscopo consistently maintained that he could not particularize this "extra" and that he could not put a reasonably exact value upon it. Considering his testimony in this light, the Court is unable to find that Arlmont has sustained its burden of proof in establishing the "extra" and its fair and reasonable value.

5. Premier has paid Arlmont for labor and materials furnished under the sub-contract the total amount of $5,690.00 as follows:

By check: Oct. 30, 1964 – $2,500.00 (Stip. – Int. No. 45)
"       Dec. 31, 1964 –  1,000.00  "
"       Feb.  2, 1965 –   330.00  "
"       Feb. 28, 1965 –   310.00  "
"       Mar.  4, 1965 –  1,000.00* "
"       Apr. 21, 1965 –   550.00  "

Total  $5,690.00

───◆───

6. Premier and Agricultural have paid the total amount of $5,122.03 to Arlmont's suppliers in payment of Arlmont's obligations to them for materials and labor furnished for the work provided for in the subcontract, as follows:

| Supplier | Amount | |
|---|---|---|
| The Powers Regulator Co. Skokie, Illinois | $1,554.56 | (Stip.) |
| The John Bonner Co. Cambridge, Massachusetts | 1,041.32 | " |
| Gagnon's Van Buren, Maine | 244.28 | " |
| Romeo J. Roy, Inc. Upper Frenchville, Maine | 2,281.87 | " |
| Total | $5,122.03 [5] | |

───◆───

7. The subcontract was terminated by Premier by telegram dated May 11, 1965 because of Arlmont's alleged breach of contract. (Plaintiff's Exhibit No. 3). As of that date, Arlmont had completed approximately 80% of the work provided for in its subcontract. As of that date, Arlmont had failed to pay any of its suppliers listed in paragraph 4, supra, for the materials and labor furnished by them, with the exception of a payment of $1,000 to Romeo J. Roy, Inc., and a payment of $108 to Richard Belyea. Arlmont has not yet paid these suppliers.[6]

---

* Check made payable jointly to Arlmont and Romeo J. Roy, Inc. and credited by Roy against amounts owed it by Arlmont.

5. The parties stipulated at trial that Premier and Agricultural had in fact paid to the above suppliers for labor and materials furnished by them on the Van Buren project the total amount of $6,-253.94, as follows: $1,675.08 to Powers Regulator Co., $1,543.01 to John Bonner Co., $244.28 to Gagnon's and $2,791.-57 to Romeo J. Roy, Inc. However, to the extent that the amounts so paid to these suppliers exceed the value of the labor and materials furnished by them for Arlmont's account prior to termination of the subcontract, (see paragraph 4, supra), the payments must have been for labor and materials furnished by the suppliers after termination for use in completing the job.

6. The record discloses that Arlmont was insolvent at all times after February 9, 1965 and that on June 5, 1965 Arlmont filed in the United States District Court for the District of Massachusetts a petition for an arrangement under Chapter XI of the Bankruptcy Act. Although the

## DISCUSSION

■■ First of all, Arlmont contends that it is entitled to recover under its subcontract the full contract price, less the payments it has received and the expense incurred by Premier and Agricultural in completing the work. Such a recovery would necessarily have to be based upon a showing that Premier wrongfully terminated the subcontract. See Arthur N. Olive Co. v. United States, 297 F.2d 70 (1st Cir. 1961). But under the terms of the subcontract Arlmont was required to pay its suppliers in full for the materials and labor furnished by them to the job. It is conceded that as of May 11, 1965, when the contract was terminated by Premier, Arlmont had failed to pay most of these suppliers. This failure constituted a material breach by Arlmont which clearly justified Premier in terminating the subcontract. See Nevins v. Ward, 320 Mass. 70, 67 N.E.2d 673 (1947); cf. Houston Fire and Casualty Ins. Co. v. E. E. Cloer, General Contractor, 217 F.2d 906 (5th Cir. 1954); St. Paul Mercury Indemnity Co. v. Wright Contracting Co., 250 F.2d 758 (4th Cir. 1958); American Casualty Co. of Reading, Pa. v. Brezina Construction Co., 295 F.2d 603 (8th Cir. 1961). There is no evidence in this record of any breach or default on the part of Premier. It is axiomatic in the law of contracts that a party cannot recover on his contract unless he can show substantial performance of his own obligations under the contract or that performance was made impossible by the breach of the other party. See Rockland Poultry Co. v. Anderson, 148 Me. 211, 216, 91 A.2d 478 (1952) (dictum); Russo v. Charles I. Hosmer, Inc., 312 Mass. 231, 44 N.E.2d 641 (1942); Levine v. Reynolds, 143 Me. 15, 54 A.2d 514 (1947); Dermott v. Jones, 23 How. 220, 16 L.Ed. 442 (1859).

■ However, it does not follow, as defendant contends, that Arlmont is to be denied any recovery at all for the labor and materials furnished by it under the subcontract. According to the law of Maine, which is here applicable,[7] a defaulting contractor whose breach is not wilful and who has in good faith supplied a net benefit to the other party is entitled to recover in *quantum meruit* the net benefit conferred. Rockland Poultry Co. v. Anderson, supra, (dictum); Skowhegan Water Co. v. Skowhegan Village Corp., 102 Me. 323, 66 A. 714 (1906); Veazie v. City of Bangor, 51 Me. 509 (1863); Norris v. School District No. 1, 12 Me. 293 (1835); Restatement, Contracts § 357 (1932); 5A Corbin on Contracts §§ 1122–1125. See also American Surety Co. of New York v. United States, 368 F.2d 475 (9th Cir. 1966) (Miller Act); United States, for Use of Hudson River Stone Supply Co. v. Molloy, 144 F. 321, 11 L.R.A.,N.S., 487 (2d Cir. 1906); Nickel v. Pollia, 179 F.2d 160 (10th Cir. 1950); United States ex rel. and for Use of Soby v. Johnson, 147 F.Supp. 523, 16 Alaska 601 (1957) (Miller Act—dictum).[8] In the present case although

---

record is not complete in this respect, it appears that a plan of arrangement was subsequently approved by the court, providing for payment of a 20% dividend to unsecured creditors, but that most of the suppliers here involved have not, and will not, receive any payments under the plan.

7. In actions brought under the Miller Act, state law is applied to determine the substantive rights of the parties under their contracts. United States for Use and Benefit of Shields, Inc. v. Citizens and Southern National Bank of Atlanta, 367 F.2d 473, 477 (4th Cir. 1966); Central Steel Erection Co. v. Will, 304 F.2d 548, 554 (9th Cir. 1952); United States for Use and Benefit of Greenville Equipment Co. v. United States Casualty Co., 218 F.Supp. 653, 656–657 (D.Del.1962); cf. American Auto Ins. Co. v. United States, 269 F.2d 406, 411–412 (1st Cir. 1959). In the present case, where the contract was to be performed in Maine and where suit is brought in the District of Maine, the law of Maine determines the sufficiency of performance as well as questions of damages and remedy. E. g. Katz v. Gordon Johnson Company, 160 F. Supp. 126 (D.Me.1958).

8. The rule under federal common law would seem to be the same as under Maine

Arlmont's breach in failing to pay its suppliers justified Premier's termination of the subcontract, there is no evidence that the breach was wilful or that Arlmont was acting in bad faith. Premier was benefited by Arlmont's partial performance in the amount of $14,719.05, the fair and reasonable value of the labor and materials furnished by Arlmont. Against this amount Agricultural is entitled to set-off the sum of $5,690.00 paid by Premier to Arlmont under the subcontract and the sum of $5,122.03 paid by Premier and Agricultural to Arlmont's suppliers, a total set-off of $10,812.03. This establishes $3,907.02 as the amount of the net benefit which has been conferred by Arlmont on Premier under the subcontract. Arlmont is entitled to a recovery in *quantum meruit* of this amount.[9]

law. Dermott v. Jones, 23 How. 220, 16 L.Ed. 442 (1859). The Massachusetts rule of Hayward v. Leonard, 7 Pick. 181 (1829) urged on the Court by Agricultural, but not here applicable, (see n. 7 supra) is somewhat stricter than the Maine rule and requires 'substantial performance' before any recovery may be had even in *quantum meruit*. Nevins v. Ward, supra; Green Manor Construction Co. v. Highland Painting Service, Inc., 345 F.2d 657, 660 (1st Cir. 1965); Valley Stream Flooring Corp. v. Green Manor Construction Corp., 233 F.Supp. 608, 613 (D.Mass.1963), aff'd, 336 F.2d 6 (1st Cir. 1964).

Of course, it is well recognized that the Miller Act does not furnish a cause of action in *quantum meruit* in disregard or derogation of the provisions of an express contract. Jefferson Construction Co. v. United States for Use and Benefit of Bacon, 283 F.2d 265 (1st Cir. 1960), cert. denied, Bacon v. Jefferson Const. Co., 365 U.S. 835, 81 S.Ct. 748, 5 L.Ed. 2d 744 (1961); United States for Use and Benefit of Larkin v. Platt Contracting Co., 306 F.2d 724 (1st Cir.), cert. denied, 371 U.S. 924, 83 S.Ct. 293, 9 L.Ed.2d 232 (1962); cf. United States for Use and Benefit of Harkol, Inc. v. Americo Construction Co., 168 F.Supp. 760 (D. Mass.1958). However, to the extent that a remedy in *quantum meruit* is provided by applicable state contract law, such a remedy may be asserted in a suit under the Miller Act. See e. g., Narragansett Improvement Co. v. United States, 290

## CONCLUSIONS OF LAW

The Court's conclusions of law are:

1. This Court has jurisdiction of the action and of the parties thereto.

2. This action was commenced within one year after the date on which the last of the labor was performed or the material was supplied by the use-plaintiff in the prosecution of the work provided for in the subcontract, and was therefore timely brought as required by 40 U.S.C. § 270b(b) (1964).

3. The use-plaintiff's failure to pay its suppliers for materials and labor furnished to it for the subcontract constituted a material breach of the subcontract and was sufficient cause for the termination of the subcontract by the defendant Premier Contractors, Inc. The use-plaintiff's breach of the subcontract was not wilful or in bad faith.

F.2d 577, 580 (1st Cir. 1961) (defendant in default); American Surety Co. of New York v. United States, supra (plaintiff in default); Valley Stream Flooring Corp. v. Green Manor Construction Corp., 233 F.Supp. 608 (D. Mass.1963), aff'd, 336 F.2d 6 (1st Cir. 1964) (by implication) (plaintiff in default).

9. The amount of the benefit for which a defaulting contractor can recover in *quantum meruit* is limited to the lesser of two amounts: (1) the net benefit conferred by his partial performance; (2) the contract price, less the amount sustained in damages by the other party as a result of the failure of the plaintiff to fully perform. See: Restatement, Contracts, § 357 (1932); 5A Corbin on Contracts, § 1124. Compare, Rockland Poultry Co. v. Anderson, supra, with Skowhegan Water Co. v. Skowhegan Village Corp., supra, and Norris v. School District No. 1, supra. Cf. Hayward v. Leonard, supra, n. 8. However, since Agricultural has not produced any evidence as to the amount of damage sustained by Premier and Agricultural as a result of the failure of Arlmont to complete the work required by the subcontract, there is no factual basis for computation of the second of the two above-mentioned figures and Arlmont's recovery must be based solely on the net benefit conferred. Cf. Viles v. Kennebec Lumber Co., 118 Me. 148, 106 A. 431 (1919).

4. The use-plaintiff is not entitled to recover anything of the defendant Agricultural Insurance Company under the subcontract.

5. The use-plaintiff is entitled to recover of the defendant Agricultural Insurance Company in *quantum meruit* the sum of $3,907.02, computed as follows:

| | | |
|---|---|---|
| Value of materials and labor furnished by the use-plaintiff under its subcontract | | $14,719.05 |
| Less: | | |
| Payments by Premier and Agricultural to use-plaintiff's suppliers | $5,122.03 | |
| Payments received by use-plaintiff from Premier | 5,690.00 | 10,812.03 |
| Balance | | $ 3,907.02 |