1998 ME 122

**Jeffrey N. GILLMAN**

v.

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 16, 1998.
Decided May 27, 1998.

Jeffrey N. Gillman, Warren, for plaintiff.

Andrew Ketterer, Attorney General, Raymond E. Ritchie, Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1]   Jeffrey N. Gillman appeals from a judgment of the Superior Court (Knox County, *Marden, J.*) affirming a determination of the Department of Human Services that Gillman is in debt to the Department in the amount of $2,735.35 for child support arrearages.   Gillman contends that a prior decision of the court denying his former wife's motion for contempt, which motion was based, at least in part, on Gillman's failure to pay arrearages, established that he has no obligation for the arrearage.   We disagree and affirm the judgment.

[¶ 2]   Gillman and his former wife, Valerie Burnell–Blehm, were divorced by judgment of the Superior Court in 1993.   The judgment provided that Gillman pay to Burnell–Blehm $111.22 per week for the support of their child, the amount to increase to $137.35 per week after the child's twelfth birthday.   The custody of the child, who resides with the mother in Oregon, was to be shared.   The judgment provided detailed guidelines and schedules for visitation by Gillman, who resides in Maine.

[¶ 3]   In 1995 and 1996, the parties filed multiple post-judgment motions.   Blehm filed motions for relief and for contempt,

alleging that Gillman was in arrears thirteen weeks for child support. Gillman filed motions for contempt and to amend the divorce judgment. Blehm filed a cross-motion to amend the divorce judgment, and Gillman filed a motion to compel discovery. The motions were finally heard, together, on July 1, 1996. In its August 26, 1996 order on the motion, the court (*Marsano, J.*) found *inter alia*, that the parties' responses to requests from the court for financial information "were, to say the least, less than satisfactory," and that Blehm was "attempting to obscure the value of her parents' estate and her own." The court noted that Gillman did not use the correct form for his financial disclosure pursuant to M.R. Civ. P. 80(c),[1] but "[b]ecause the form selected is in common use notwithstanding its inappropriate nature, no sanctions [against Gillman] are in order under Rule 37(b)(2)."[2] (*Id.*). The order concluded with the following paragraph:

The orders made herein are prospective and become effective as of the date of this Judgment. All motions for contempt are DENIED; the evidence, especially the missing affidavits, are such that the Court exercises its powers pursuant to Rule 37(B)(2), (B) and (C). All motions for contempt are DENIED. All motions to amend the divorce judgment, except as amended hereby,[3] are DENIED.

The order reduced Gillman's weekly child support obligation and specifically addressed several details regarding visitations and medical expenses. Except for denying "[a]ll motions for contempt," the court's order was silent regarding Blehm's denied motion for contempt in which a child support arrearage on Gillman's part was alleged.

[¶ 4] Blehm pursued that arrearage by entering into a contract with the Department for enforcement of child support payments pursuant to 19–A M.R.S.A.2013 (1998). As a result, on November 26, 1996, the Department issued a notice of debt to Gillman, resulting in a hearing on February 26, 1997. The hearing officer ruled that the child support arrearage debt as of the notice was $2,735.35.

[¶ 5] Pursuant to M.R. Civ. P. 80C and 19–A M.R.S.A. § 2202 (1998), Gillman filed an appeal in the Superior Court. The court affirmed the decision of the Department, and this appeal by Gillman followed.

[¶ 6] When the Superior Court acts as an intermediate appellate court, we examine the administrative record directly for an abuse of discretion, error of law or findings unsupported by substantial evidence in the record. *See Rodriques v. Maine State Retirement Sys.*, 1997 ME 56, ¶ 8, 691 A.2d 1205, 1207.

1. M.R. Civ. P. 80(c) provides in pertinent part:

   **(c) Filing of Financial Affidavits and Work Sheets.** In any proceeding under this rule in which child support is an issue, the parties shall exchange and file affidavits of income and assets and child support work sheets as required by 19 M.R.S.A. § 314 on forms that the Supreme Judicial Court shall prescribe by administrative order....

   If a party fails to file any affidavit, work sheet, or statement required by this rule, the court may make such orders in regard to such failure as are just, including those specified in Rule 37(b)(2) as appropriate.

2. M.R. Civ. 37(b)(2) provides in pertinent part:

   (2) Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

   (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

   (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

   (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

3. The court amended Gillman's child support obligation by reducing his weekly support payments to $91.00 per week, based on a finding that Blehm's income had achieved a parity with Gillman's.

[¶ 7] The question presented in this case in one of law: was the Department correct in concluding that the Superior Court's order of August 26, 1996 did not excuse Gillman from his child support arrearage? The hearing officer concluded:

> [B]y a plain reading and straightforward interpretation—with no attempt at creativity toward either party's position—the Court chose to amend the current weekly support obligation, and had the Court chosen to excuse any arrearage due from the 6/93 Divorce Judgment, it would have so stated in its Order. Rather than excuse any arrearage due, the Court simply chose to amend the current support obligation of Mr. Gillman, with no further amendments, and to deny all motions for contempt.

[¶ 8] Gillman contends that the court's denial of Blehm's motion for contempt necessarily included a determination that he owed no arrearage, and that Blehm, by pursing the arrearage through the Department, is circumventing the court's order.

■ [¶ 9] Gillman's argument appears to be based on the issue preclusion prong of the *res judicata* doctrine. *See Machias Sav. Bank v. Ramsdell*, 1997 ME 20 ¶ 11, 689 A.2d 595, 599 ("Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding."). A prior judgment can be used for collateral estoppel only if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity to litigate the issue in the prior proceeding. *Mutual Fire Ins. Co. v. Richardson*, 640 A.2d 205, 208 (Me.1994) (emphasis added).

■ [¶ 10] Because a finding that Gillman was excused from his arrearage was not necessary to the determination that he was not in contempt, the Department correctly determined that Gillman owed the arrearage. Blehm's motion for contempt was a request that the court exercise a power that is discretionary with the court. *See Brierly v. Brierly*, 431 A.2d 410, 412 (R.I.1981) ("the matter of determining and dealing with contempt is within the sound discretion of the trial justice"); 1 J. Kent, *Commentaries on American Law*, (commenting on "immemorially exercised discretion of the courts in respect to contempts").[4] The court is exercising broad discretionary powers in deciding whether to find a party in contempt, and there are reasons for deciding not to issue a contempt order, such as misconduct on the part of the party seeking contempt, that are not based on a finding that the underlying basis for the contempt request has no merit. *Cf. Williams v. Jones*, 11 F.3d 247, 256 (1st Cir.1993) (Because an injunction could "expose the enjoined party to the district court's coercive contempt powers . . . , fraud and 'unclean hands' historically have been regarded as valid equitable defenses to injunctive relief.").

[¶ 11] The order denying Blehm's motion does not state that it is based on a failure to prove the existence of the arrearage.[5] Indeed, the denial of Blehm's motion appears to be largely driven by the Court's dissatisfaction with her conduct. The court stated that it was exercising its Rule 37(b)(2), (B) and (C) powers, and found Blehm to be, in M.R. Civ. P. 37(b)(2) terms, the "disobedient party."[6] The subsections of the rule cited

---

**4.** *See also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911) ("[T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law").

**5.** In addition to Blehm's allegation that Gillman was in arrears, her motion for contempt in this case was also based on Gillman's alleged failure: (a) to take care of the child's travel, (b) to reim-burse Blehm for health insurance, and (c) to pay for uncovered medical and dental expenses.

**6.** The court's contempt powers are inherent, and are in addition to the contempt powers provided in the child support statute, from 19 M.R.S.A. § 772 (recodified at 19–A M.R.S.A. § 2601 (1998)) ("Upon a motion to enforce a degree of alimony, support or cost, the court may issue summary process and may find the defaulting person guilty of contempt as provided under Title 14, § 252."). *See Elliot v. Elliot*, 431 A.2d 55, 56–57 (Me.1981) (The contempt power autho-

by the court enumerate a variety of other reasons in the form of sanctions that are consistent with its decision not to make a finding of contempt.[7]

[¶ 12] Moreover, the court's order made the reduction in Gillman's child support obligation prospective, and leaves unaltered any arrearage up to the date of the order. *See Dow v. Adams,* 1998 ME 48, ¶ 18, 707 A.2d 793, 797 (in post-judgment proceedings, former wife's waiver of alimony arrearages did not compromise her right to future alimony where divorce decree remained unaltered). The Department legitimately adjudicated the issue of the unaltered arrearage and its determination is not precluded by the 1996 order declining to find Gillman in contempt.

The entry is:

Judgment affirmed.

---

rized by § 252 "is without design ... to delineate exclusive or exhaustive compass of the inherent contempt powers of a court.... The inherent contempt powers of the divorce court were available for its enforcement.").

Contrary to Gillman's suggestions, the court's contempt powers are by no means automatic penalties imposed any time a party proves that another has failed to comply with a court order. *Cf. Small v. Small,* 413 A.2d 1318, 1324 (Me. 1980) (Title 19 provides "a clarification that the power of criminal contempt will be available to the courts, not to the exclusion of but in addition to the power of civil contempt.").

7. The sanctions provided in M.R. Civ. P. 37(b)(2)(B)—(C) include:

(1) "refusing to allow the disobedient party to support or oppose designated claims or defenses," (2) "prohibiting that party from introducing designated matters in evidence," (3) "striking out pleadings or parts thereof," (4) "staying further proceedings until the order is obeyed," (5) "dismissing the action or proceeding or any party thereof," or (6) "rendering a judgment by default against the disobedient party."