STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2009 JUN 15 P 2: 35

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-07-45

CIANCHETTE FAMILY LLC.,

Plaintiff,

v.                                                                    ORDER

SHAMAYEL KARGAR and
MOHAMMED KARGAR,

Defendants.

Before the court are Defendants' Motion to Implement Settlement Agreement and Plaintiff's Motion for Contempt.

Defendants' motion presents the court with the parties' second dispute regarding the meaning of the parties' settlement agreement[1] – viz., whether the term "agricultural activities" in paragraph 4 of Exhibit C to the settlement documents drafted by Plaintiff's counsel ("Proposed Settlement Documents")[2] includes the right to dump, store or stockpile materials or waste, such as manure, on Lots 1, 2 and 12, as shown on the plan of a residential subdivision known as the Sherwood Forest Subdivision ("Subdivision") in Falmouth, Maine. *See* Defendants' Exh. 1. In

---

[1] The first dispute centered on Plaintiff's challenge to Defendants' claim that the settlement agreement reserved to Defendants the right to use the an open space area for "passive and active recreation uses." In an Order, dated April 6, 2009 the court concluded that it did not.

[2] A copy of the Proposed Settlement Documents is attached to Plaintiff's Response And Objection To The Kargar's Motion To Implement Settlement Agreement. Paragraph 4 of Exhibit C to the proposed settlement documents provides, as follows:

> Former Lots 1, 2 and 12 shown on the Plan shall be for residential use only, and any house built thereon shall have a total square footage of heated space of at least 2,800 square feet. Grantor, however, retains the right to conduct *agricultural activities* upon each of Lots 1, 2 and 12.

Id. (emphasis added)

opposition, Plaintiff asserts that Defendants' motion seeks declaratory relief and this court lacks jurisdiction to entertain it.

Plaintiff's motion for contempt seeks sanctions against Defendants for failing to execute the Proposed Settlement Documents and an order directing that Defendants sign them.

A testimonial hearing on the motions was held on June 2, 2009. At the hearing, the parties stipulated that (1) the specific language of the Proposed Settlement Documents is consistent with their settlement agreement and is agreed upon by the parties, and (2) Defendants have declined to sign the documents pending resolution of the issues raised by their motion. The remaining facts hereafter recited are based on the evidence this court finds credible.

## BACKGROUND

On April 12, 2005 Plaintiff purchased the Subdivision from Davis Land Development, LLC ("Davis"). Mary Alice Davis was a member of that LLC. The Subdivision was subject to a Declaration of Protective Covenants, Reservations, Restrictions and Easements ("Declaration"). Previously, on August 20, 2004, Defendants had purchased Lot 11 in the Subdivision from Davis and built their residence on it. *See* Defendants' Exh. 1. Lot 12 in the Subdivision is adjacent to Defendants' lot. *Id.* Lots 1 and 2 are literally "across the street" from Defendants' lot on the opposite side of a 50-foot wide private road or access way known as "Howard's End Drive." *Id.*

In February 2007, Plaintiff initiated this action alleging that Defendants were in violation of provisions of the Declaration. The parties reached an accord on all issues following a judicially assisted settlement conference on August 11, 2008. In general, the terms of the settlement included Defendants' agreement to cooperate with Plaintiff's attempts to terminate the Subdivision. It was also agreed that Plaintiff would reserve an open space area to the rear of Defendants' residence ("New Open Space"), subject to rights and restrictions, including "agricultural uses", described in the Declaration, and that Plaintiff would retain Lots 1, 2 and 12

2

shown on the Subdivision Plan for residential use only and would retain the right to conduct "agricultural activities" upon each of those lots until they were built upon.

The agreement, which contemplated the drafting and execution of various documents for its implementation, was recited on the record. *See* Transcript filed on February 9, 2009 (Tr.). Among other things, the parties agreed that this court "shall retain jurisdiction over this matter including disputes regarding the implementation and drafting of the settlement documentation." Tr. at 6.

Over time, following the settlement conference, the parties worked out most of their difficulties regarding the language of the documentation. However, in late 2008 they both called upon the court to resolve a disagreement regarding the meaning of certain language relevant to the implementation of the settlement agreement.[3]

On February 10, 2009 Defendant Shamayel Kargar was subpoenaed by Mary Alice Davis to testify at court in a case brought by Plaintiff Cianchette Family, LLC against Ms. Davis. While at the courthouse that day, Mrs. Kargar received a call from her husband who told her that trucks were dumping loads of manure on Lot 2 across Howard's End Drive from Defendants' home. More manure was dumped the next day forming a large pile along the wood line to the rear of Lot 2 approximately 500 feet from Defendants' property line.[4] Mrs. Kargar opined that the pile was approximately 200 cubic yards in size, that it could be seen from her home, and that

---

[3] In November 2008 the parties reported to the court an impasse regarding the meaning of the term "restrictions and rights" in the following language of their settlement agreement:

"The open space covenant for the new open space will have the same *restrictions and rights* as the covenants in the declaration that have been terminated by agreement of the party [sic]".

Tr. at 5 (emphasis added). Defendants urged that the term accorded them the right to use the New Open Space for "passive and active recreation." In an order, dated April 6, 2009, this court concluded that this language did not give them that right.

[4] As of the date of this hearing, 3 or 4 loads of manure have been removed to fertilize hay fields on other parts of Plaintiff's land.

3

the stench was unbearable.[5] Plaintiff does not deny that it caused the manure to be dumped and piled on Lot 2.

This incident was the first time that manure or any other materials were dumped, stored or stockpiled on Lot 2 — at least since Defendants purchased Lot 11 in 2004. Within that same time frame, no manure or other materials has ever been dumped, stored or stockpiled on Lots 1 or 12. Plaintiff owns approximately 150 acres of land, mostly farmland, surrounding Lots 1, 2, 12 and Defendants' property and, in prior years, Plaintiff has stored or stockpiled manure on some of its land to the northwest of Defendants' property.

DISCUSSION

A.    Defendants' Motion to Implement Settlement Agreement

As described by Defendants, this dispute concerns the meaning of the term "agricultural activities" in paragraph 4 of Exhibit C to the Proposed Settlement Documents. This dispute is relevant to the implementation of the agreement. Paragraph 4 provides as follows:

> Former Lots 1, 2 and 12 shown on the Plan shall be for residential use only, and any house built thereon shall have a total square footage of heated space of at least 2,000 square feet. Grantor, however, retains the right to conduct agricultural activities upon each of Lots 1, 2 and 12."

According to Defendants, Plaintiff's recent dumping of manure on Lot 2 does not constitute an "agricultural activity" within the meaning of the settlement agreement or the Proposed Settlement Documents.

1.    The Court's Jurisdiction

Plaintiff asserts that this court lacks jurisdiction to consider Defendants' motion because it inappropriately seeks declaratory relief that should be pursued under Maine's Uniform

---

[5] Although Mr. Cianchette did not agree with Ms. Kargar's estimate of the size of the stockpile, he did not offer his own estimate. Without objection, Plaintiff's counsel showed the parties and the court digital photos of the stockpile he had taken on the morning of the motion hearing. The photos were displayed on counsel's camera, but no hard copies were introduced into evidence.

4

Declaratory Judgments Act, 14 M.R.S. §§ 5951, et seq. However, the court agrees with Defendants' counter argument that their motion and the court's authority to hear it are appropriate and contemplated by the parties' settlement agreement because the motion is directed to a dispute regarding the implementation of the agreement.[6] The settlement agreement, as it was read into the record, provides that "the Court – i.e. Justice Humphreys [sic] – shall retain jurisdiction over this matter including disputes regarding the implementation and drafting of the settlement documentation." Tr. at 6. A similar and undisputed provision appears in paragraph 6 of the "Agreement" portion of the Proposed Settlement Documents, which were prepared by Plaintiff's counsel.

> The Superior Court, through Justice Humphrey, shall retain jurisdiction over this matter *including* resolving disputes regarding the implementation of this settlement.

Proposed Settlement Documents, Agreement at ¶ 6 (emphasis added).

Thus, the parties expressly agreed that this court would retain jurisdiction over the implementation of the settlement and the court regards the dispute identified in Defendants' motion as one related to the *implementation* of their agreement. Like the parties' earlier dispute regarding the meaning of "restrictions and rights," Defendants ask the court for assistance in clarifying the disputed meaning of the term "agricultural activities" so that the settlement can be implemented and finalized. Accordingly, the court concludes that it has jurisdiction to resolve this dispute.

2.      "Agricultural Activities"

The parties do not appear to dispute that, although they agreed that the New Open Space would be subject to "the same restrictions and rights as the covenants in the declaration that have

---

[6] The court declines to opine whether its conclusion would be different if Defendants' motion followed the execution of the settlement documents.

5

been terminated by agreement of the party [sic] [including continued] *agricultural uses* by the owner Cianchette," Tr. at 5 (emphasis added), their agreement did not expressly impose those "same restrictions and rights" upon Lots 1, 2 and 12. Rather, the parties separately agreed that, "[u]ntil houses are built on those lots, Cianchette will retain the right to do haying and agricultural activities [on them.]" Tr. at 6.

Defendants argue, in effect, that the rights and restrictions in the Declaration pertaining to "agricultural uses", which are applied to the New Open Space, are extended with equal force to Lots 1, 2 and 12. From this premise, Defendants point to Article XII, Section 12.2 of the Declaration, which provides that the New Open Space "shall be restricted to agricultural uses, including raising livestock, and shall be kept in essentially its existing condition," and to section 12.8.9, which expressly prohibits the dumping and storage of solid waste, including manure, in the open space areas, except for spreading fertilizers and soil supplements.[7]

Under the settlement agreement, the rights and restrictions in the Declaration regarding "agricultural uses" on the New Open Space are not expressly extended to Lots 1, 2 and 12. The agreement simply does not state that. However, those rights and restrictions do inform the meaning of "agricultural activities" on the residential lots.[8] Quite clearly, under the Declaration, "agricultural uses" on the New Open Space does not include storing or stockstockpiling [sic] manure or like materials. The reasons for this limitation in the original Declaration seem obvious. Stockpiling waste adjacent and proximate to residential lots, even in a rural location, is an unsavory practice and can be an unhealthy one (e.g., potential deleterious effect on water

---

[7] Section 12.8.9 prohibits: "Dumping of ashes, trash, garbage, landfill or dredging spoils, or other solid waste, except for spreading fertilizers and soil supplements for purposes of fertilizing and supplementing the soil and the use of pesticides and herbicides in connection with the environmentally sound agricultural use of the Common Areas in compliance with all applicable laws and regulations."

[8] It also bears noting that the terms "uses" and "activities" are used interchangeably in the Declaration. For example, Section 12.4 states: "It is the intention of Declarant to confine the uses of the Open Space Parcel 'A' to activities which are compatible with environmentally sound agricultural practices[.]"

6

supplies; noxious odors; attraction for vermin; etc.). In the context of Lots 1, 2, 12 and Defendants' Lot 11, which are residential lots, the same limitations on "agricultural uses" under the Declaration seems no less applicable to the "agricultural activities" allowed under the parties' agreement.

Accordingly, the court concludes that there is essentially no difference in the meaning of "agricultural uses" on the New Open Space and "agricultural activities" on Lots 1, 2 and 12. And, in particular, "agricultural activities" does not include the dumping, storing or stockpiling of waste, including manure, on Lots 1, 2 or 12.

B.      Plaintiff's Motion for Contempt

Plaintiff asserts that Defendants are in contempt of the settlement agreement because they refuse to sign the Proposed Settlement Documents even though they agree with the language of the documents. For their part, Defendants do not agree that the term "agricultural activities" in the settlement agreement or the proposed documents permits Plaintiff to dump, store or stockpile manure on Lot 2 as it has done and they will not validate Plaintiff's conduct or lend credence to its interpretation of "agricultural activities" by signing those documents.

The court has no difficulty concluding on this record that the Defendants have not committed contempt in any respect. *Cf.* M.R. Civ. P. 66(a)(2). They have not engaged in any disorderly, insolent or otherwise disturbing conduct or behavior. M.R. Civ. P. 66(a)(2)(i). Nor have they failed to comply with any judgment or order of the court. M.R. Civ. P. 66(a)(2)(ii).

Even if it could somehow be said that the parties' settlement agreement is not just an enforceable contract,[9] but an order of the court which Defendants have violated by their refusal

---

[9] *See Muther v. Broad Cove Shore Ass'n,* 2009 ME 37, ¶¶ 6-7, 968 A.2d 539, 541-42 ("[When, as here, the parties to a dispute report to the court that they have reached a settlement, read the terms of the agreement into the record with the assistance of counsel, and then express clear consent to those terms as recited, that settlement becomes an enforceable agreement . . ..").

7

to sign the Proposed Settlement Documents, no punitive or remedial order against them would be warranted. In ruling on a motion for contempt, the court has broad discretionary powers. *See Gillman v. Dep't. Human Servs.*, 1998 ME 122, ¶ 10, 711 A.2d 154, 156. The court may refuse to sanction for a contempt flowing from misconduct by the party seeking redress for the contempt. *Id.* Thus, it is appropriate for the court to consider whether Plaintiff comes to the court with "clean hands" and is itself complying with the parties' agreement.

The Law Court has determined that "settlement agreements are analyzed as contracts."[10] Thus, one party's failure to perform under the contract may be excused in the face of a material breach by the other party.[11] Accordingly, Plaintiff's compliance with the terms of the parties' settlement agreement is relevant to the court's consideration of the motion for contempt.

In this case, the court has determined that "agricultural activities" does not include dumping, storing or stockpiling manure. Based upon this interpretation of the settlement agreement and the parties' respective obligations under it, the court concludes that Plaintiff's action in causing or allowing manure to be dumped and piled on Lot 2 is not in compliance with the agreement.

Because the parties do not disagree with the express language of the Proposed Settlement Documents, but only dispute the meaning of the term "agricultural activities," they shall be directed to execute those documents. This order resolves that dispute and clarifies that the term "agricultural activities," as it pertains to Lots 1, 2 and 12 of the Subdivision, does not include the right to dump, store or stockpile materials or waste, such as manure, and that term shall have the

---

[10] *Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d at 541.

[11] *U.S. for Use and Benefit of Arlmont Air Condition Corp. v. Premier Contractors, Inc.*, 283 F.Supp. 343 (D. Me. 1968). ("It is axiomatic in the law of contracts that a party cannot recover on his contract unless he can show substantial performance of his own obligations under the contract or that performance was made impossible by the breach of the other party.") (cited with approval by *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 53 (Me. 1996)).

same meaning and limitations as "agricultural uses", as that latter term pertains to the New Open Space area.

## DECISION

Accordingly, pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order in the Civil Docket by a notation incorporating it by reference, and the entry is

A. Defendants' Motion to Implement Settlement Agreement is GRANTED, and the court determines that that the term "agricultural activities" as used in the parties' settlement agreement and in the Proposed Settlement Documents, insofar as that term pertains to the areas of Lots 1, 2 and 12 shown on the plan of a residential subdivision known as the Sherwood Forest Subdivision in Falmouth, Maine, does not include the right to dump, store or stockpile materials or waste, such as manure, on those lots, and that term shall have the same meaning and limitations as the term "agricultural uses" used in the parties' aforesaid agreement and documents, insofar as that latter term pertains to the New Open Space area;

B. So much of Plaintiff's Motion for Contempt that seeks an order requiring the parties to execute and implement the Proposed Settlement Documents is GRANTED, but subject to the foregoing determinations by the court; however, the remainder of the relief sought by Plaintiff in its motion is DENIED; and

C. Based upon and subject to the foregoing determinations by the court in paragraph A, above, it is ORDERED that the parties shall forthwith implement their settlement agreement by executing and delivering the originals of the Proposed Settlement Documents prepared by Plaintiff's counsel.

Dated:   June 15, 2009

_____
Chief Justice, Superior Court

9

CIANCHETTE FAMILY LLC VS SHAMAYEL KARGAR ET AL
UTN:AOCSsr  -2007-0018413                 CASE #:PORSC-RE-2007-00045
--------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE      DATE
01 0000006851 ATTORNEY:CUMMINGS, DANIEL
ADDR:415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
     F FOR:SHAMAYEL KARGAR                    DEF        RTND   04/04/2007
     F FOR:MOHAMMED KARGAR                    DEF        RTND   04/04/2007

02 0000003232 ATTORNEY:PERKINS, DAVID
ADDR:30 MILK STREET PO BOX 449 PORTLAND ME 04112-0449
     F FOR:CIANCHETTE FAMILY LLC              PL         RTND   02/20/2007

Select A=Atty, B=Bail, D=DckPr, E=Evt, F=Fin, J=Jdgm, O=Ordr, P=Prty, R=Review:

To exit this option, select the EXIT KEY.